### 782.   JENKINS v. THE STATE.

1. Generally it is not murder, but manslaughter, to kill an officer or another person to prevent an illegal arrest. Consequently, shooting an officer without killing him, if done to prevent an illegal arrest, is prima facie not an assault with intent to murder, but the statutory crime of shooting at another, as defined in the Penal Code, § 113, or assault and battery. Whether the person whose rights are thus invaded is guilty of any offense depends upon the facts of the particular case. If the force of resistance is not in excess of the force of invasion, and is used solely for the purpose of prevention, no offense is committed.

2. The fact that a city charter contains no provision for the issuance of warrants for violations of municipal ordinances is not relevant or material in determining the legality of an arrest for such violation; and it was error to admit such testimony, and to instruct the jury that this omission could be considered by them in determining the legality of such arrest. The fact that the legislature has not authorized a municipality to issue warrants for offenders against city ordinances affords no excuse for illegally depriving a citizen of his right of personal liberty. The legality of an arrest in such cases is to be determined by the provisions of the Penal Code, § 896, which "is applicable alike to State and municipal arresting officers."

3. Where the defense set up was lawful resistance to an illegal arrest, the law of self-defense was not alone applicable. The court should have instructed the jury as to the right of the defendant to resist an attempt to arrest him illegally, and not merely his right to defend himself against an attempt, by violence or surprise, to commit a felony on his person.

4. On a trial for assault with intent to murder, an instruction that left it optional with the jury to convict the defendant of that offense, or of shooting at another not in self-defense, although they might believe that if death had resulted the offense would have been manslaughter, was erroneous. If death had resulted and the offense would have been manslaughter, death not resulting, the offense would have been shooting at another not in self-defense, or assault and battery.

Indictment for assault with intent to murder, from Lowndes superior court—Judge Mitchell. September 9, 1907.

Submitted November 11,—Decided November 25, 1907.

*Cranford & Wilcox,* for plaintiff in error.

*W. E. Thomas, solicitor-general,* contra.

HILL, C. J.   King Jenkins was convicted of the crime of assault with intent to murder, on substantially the following evidence:   On December 28, 1906, Pressley and McIntyre, two policemen of the city of Valdosta, while on duty, heard the report of firecrackers from the direction of a negro barroom. They went to

this barroom to investigate, and Pressley entered. He found the defendant in there, with several other negroes, playing pool. The officer told the negroes not to fire any more crackers, as it was against a city ordinance. The defendant replied, "The man that done that has gone out;" and the officer said, "I don't want any more of it," and started away. He was called back into the barroom by the bartender, but for what purpose does not appear. When he got back into the barroom, he again spoke to the negroes, telling them that he did not want any more cannon crackers thrown out on the street, that it was against the ordinance, and they must stop it. The defendant again said, "The man that shot the cannon crackers has gone out;" whereupon the following colloquy, according to the policeman, took place between him and the defendant. "I said, 'I have heard enough from you, be quiet;' and he kept on talking. I said, 'If you don't dry up, I will put you in the lockup;' and he said, 'You won't carry me nowhere;' and I said, 'I will show you.'" The officer took hold of the defendant, and he endeavored to jerk loose. During the struggle between these two, the other policeman came in and caught hold of the defendant, and the pistol fired, the bullet going through the coat of the latter officer and striking his badge, going partly through it, but inflicting no wound. Pressley said, that he struck the defendant over the head with his club before McIntyre came in; that he did not see the pistol in the hand of the defendant until after it was fired. McIntyre testified, that he heard the defendant say, "I'll go with you nowhere;" and, stepping up to the door, he saw the defendant "resisting arrest and fighting Pressley," but he saw nothing in his hand at this time. "When I got close to him I saw him draw his pistol (I do not know from where), and try to shoot Pressley. When he drew it, I jumped at him and grabbed the gun. I had my hand on the cylinder and kept it from revolving for a while, but in the tussle I loosed up on it in some way. He was trying to get it on me and I was trying to keep it off. I could not wring it out of his hand. He was trying to shoot me, the pistol fired, and I wrung it out of his hand." Pressley was trying to arrest the negro who was pulling back and telling him that he would not go with him anywhere. The defendant was beaten over the head by both officers, and was bloody when finally arrested. There was no warrant for the ar-

rest of the defendant and no evidence that he had violated any city ordinance or had committed any offense. Pressley testified, "I arrested him for impudence. He gave me back talk, and it appeared that he wanted to pick a fuss out of me. I did not arrest him for shooting firecrackers, and that had nothing to do with the arrest. I had no warrant for King Jenkins, nor did I try to get one for him."

There was no evidence of a city ordinance forbidding the shooting or firing of crackers, and only the officer's statement that there was such ordinance. We do not think the existence of such ordinance material, under the State's evidence that the arrest was not for a violation of any ordinance, but because of "impudent" talk to the arresting officer. The defendant relied for his defense upon the facts proved by the State, that he had committed no offense either against the State or city, and that there was an attempt to arrest him without a warrant; claiming that he shot in resistance to this illegal arrest, in which both officers participated, and that he used no more force than was necessary to resist such illegal arrest and clubbing, as he had a legal right to do. The theory of the prosecution was, that the defendant drew a pistol from his person, where he had it concealed, and was attempting to shoot Pressley with it; that both acts were offenses against the law, and McIntyre was justifiable, under these circumstances, in "laying his hands on the pistol," and in preventing the shooting of his brother officer; and that this being justifiable, the defendant's act in shooting him amounted to an assault with intent to murder.

1. The law of arrest without a warrant has been so clearly and exhaustively enunciated by Mr. Justice Evans in *Porter* v. *State,* 124 *Ga.* 297 (52 S. E. 283, 2 L. R. A. (N. S.) 730), as to make any further discussion of the subject unnecessary and profitless. It must be conceded that the arrest or attempted arrest of the defendant by the policeman Pressley was unauthorized and illegal. While "impudence" is sometimes sufficient provocation to anger, it can never furnish justification to an officer of the law for depriving a citizen of his sacred right of liberty. If, in resisting such illegal arrest by Pressley, the defendant had shot and killed him, his offense would not have been more than manslaughter. Where an officer attempts illegally to arrest a person, and such attempt is resisted, and the officer is killed in the attempt, the

killing is extenuated from murder to manslaughter. This princi-
ple has come down to us unchanged, from the birth of personal
liberty, and will so continue until its death. 1 East's P. C. 310;
1 Russ. Crimes, 798 and 803; 1 Whart. Crim. Law, §414. Mr.
Chief Justice Bleckley, in *Thomas* v. *State*, 91 *Ga.* 206 (18 S. E.
305), says, "Generally it is not murder, but manslaughter, to kill
an officer or other person to prevent an illegal arrest. . . Con-
sequently, shooting at an officer without killing him, if done to
prevent an illegal arrest, is prima facie not an assualt with intent
to murder, but the statutory crime of shooting at another described
in section 4370 of the code [of 1882]." And see *Porter* v. *State*,
*supra; Croom* v. *State*, 85 *Ga.* 718 (11 S. E. 1035, 21 Am. St.
R. 179); *Williford* v. *State*, 126 *Ga.* 176. Of course, although the
arrest be illegal, if the killing is prompted by personal malice
against the officer, and is not in resistance to the arrest, it would
be murder. Hawley's Law of Arrest, 56. Under the facts in
this case, the defendant might have been justifiable in shooting the
policeman, Pressley, who was not only attempting to arrest him
illegally, but was beating him over the head with his club. This
would depend upon the character of the club, the extent of the
beating, and the apparent danger to defendant's life.

2. The State contended that the arrest of the defendant for a
violation of a city ordinance, without a warrant, was legal, because
there was no provision in the city charter for the issuance of
warrants for violations of municipal ordinances. The court per-
mitted the introduction of evidence to show that there was no such
provision in the charter, and, in his charge, instructed the jury
that they might consider this omission in the charter, in connec-
tion with the circumstances surrounding the arrest, in determin-
ing whether the arrest of the defendant was illegal. The testi-
mony on this subject was admitted over the objection of the de-
fendant, and its admission is one of the errors assigned. The ad-
mission of this testimony was erroneous, for two reasons: first,
it was not relevant to the issues, it not being claimed that the de-
fendant had violated any city ordinance, or that his arrest was
for any violation or suspected violation of any ordinance; and
secondly, the fact that the charter of the city did not authorize a
warrant for the violation of a city ordinance was a matter which
neither the jury nor the court could properly consider in determin-

ing the legality of the arrest. As Mr. Justice Evans says in *Porter* v. *State,* supra (p. 303), in discussing the effect of a failure by the legislature to make provision in charters of towns and cities for the issuing of warrants for the apprehension of offenders against municipal ordinances, "If this be true in point of fact, then the effect of such omission would be, not to abrogate the general law on the subject of arrest, or to deprive the citizen in any measure of his right of personal liberty, but to afford the municipality no means of bringing the offender to account other than those for which the general law makes provision." For the same reasons that made this testimony inadmissible, the court committed error in charging the jury on the subject. As we have stated, we do not think the question of the legality of the defendant's arrest was an issue in the case at all, in view of the definite statement of the arresting officer. But we are sure that if such fact was in issue, the court should have given to the jury, as the legal test by which to determine this question, section 896 of the Penal Code, which "is applicable alike to State and municipal officers." *Porter* v. *State,* supra.

3. If the arrest or attempted arrest by officer Pressley was wholly unwarranted and illegal, and the defendant, under the law, had the right to resist by the use of necessary preventive force, and if the killing of this officer by him in the exercise of such necessary preventive force could not have been a greater offense than voluntary manslaughter, the question next arises as to his rights, under the facts, in shooting officer McIntyre. If when McIntyre came into the barroom he saw his comrade engaged in a struggle with the defendant, "who had a pistol in his hand and was endeavoring to shoot the officer," it was his duty to interfere and prevent the successful use of the pistol, without regard to the merits of the difficulty between Pressley and the defendant. McIntyre required no warrant to arrest the defendant; for apparently some offense was about to be committed in his presence. If, however, the defendant, at the time he shot McIntyre, believed, and the facts as they then appeared to him reasonably justified his belief, that McIntyre was assisting Pressley in accomplishing his illegal arrest, he would have had the same right of resistance to the apparently unlawful act of McIntyre that he had to the actually unlawful conduct of Pressley. This theory of the defense arose from

the facts, and should have been submitted to the consideration of the jury. In the excerpts from the charge, set out in the 12th and 14th grounds of the motion for new trial, on which error is assigned, the contention of the defendant, that he shot policeman McIntyre "in good faith, honestly believing, and was authorized by the circumstances to believe, that the policeman's purpose, in seizing his weapon and undertaking to disarm him, was to assist the other officer in making an illegal arrest, and therein wrongfully deprive him of his liberty," seems to have been ignored. The court treated the case as one of self-defense, and not one of lawful resistance to an illegal arrest. The law of self-defense was applicable to that part of the evidence which indicated that both officers were using their clubs against the defendant, and was properly given in charge; but we are clear that the controlling question, under the facts, was lawful resistance to illegal arrest; and the defendant was entitled to have his defense, as to this question, submitted to the jury.

5. The 15th ground in the motion for new trial complains of the following charge: "If you believe that it would have been voluntary manslaughter instead of murder, why then the defendant could not be convicted of an assault with intent to murder, but you would inquire whether or not it would have been an assault and battery, or shooting at another not in his own defense. Then you will inquire, if it would have been voluntary manslaughter, whether you will find him guilty of shooting at another, or an assault with intent to murder." The error in the latter part of this charge is so palpable that it suggests an ellipsis; but we must decide from the record, and it is manifest that it was erroneous to leave it optional with the jury to find the defendant guilty of assault with intent to murder, or of shooting at another not in self-defense, although they might have concluded that the offense would have been manslaughter if death had resulted. In this event, the only legal verdict would have been shooting at another, as defined in the Penal Code, §113, or assault and battery.

For the reasons stated, we think the court should have granted a new trial.                                *Judgment reversed.*