46955. HOLTZENDORF v. THE STATE.

SUBMITTED MARCH 8, 1972—DECIDED MARCH 17, 1972.

*J. S. Hutto & Associates, Eugene Highsmith,* for appellant.

DEEN, Judge. Two police officers beginning their evening rounds in the City of Brunswick were informed by another officer off duty that there were two persons in a local restaurant talking loud who might be going to cause a disturbance, and that one of them might be intoxicated. They drove past the restaurant at about 1:30 a.m. and noted that all was quiet. They then cruised in the vicinity and some five blocks away came upon two young men walking on the sidewalk. The officers alighted from the patrol car, demanded identification, and satisfied themselves that the

youths were not intoxicated. One of them then demanded of the defendant what he was carrying in a paper bag and the defendant replied that it was a bottle of apple wine. Further questioned he stated that it was his wine and he was 19 years old. Both boys were then placed under arrest for violation of a city ordinance forbidding possession of alcoholic beverages by minors. The defendant was ordered to stand with his back to the officer and hands against the roof of the police car and was subjected to a minute search, in the course of which his pants came unbottoned and he was forced to remove his shoes. A packet of cigarettes was removed from his shirt pocket, and under it a "very small bag rolled up" of plastic containing the contraband for possession of which he was placed on trial.

The State contends that the defendant voluntarily surrendered the bottle of wine which, with the statements that he was a minor and that the wine belonged to him, left no doubt that he was violating the law; that the arrest was therefore legal because the crime was committed in the presence of the officers, that the search was legal as incident to a valid arrest, and that the discovery of the gram or so of marijuana was admissible in evidence.

*Code Ann.* § 27-301 provides: "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of (a) protecting the officer from attack; or (b) preventing the person from escaping; or (c) discovering or seizing the fruits of the crime for which the person has been arrested; or (d) . . . seizing . . . things . . . which may have been used, in the commission of the crime for which the person has been arrested," and, if the search is authorized, he may also seize any object the possession of which is unlawful. The defendants were not attempting to escape, and the "fruit" of the crime *for which Holtzendorf was arrested* was quite obviously in the paper bag already in the officer's possession. A search for weapons would not comprehend the small, soft plastic bag lying beneath the pack of cigarettes in a breast pocket, as will be

developed later, and we prefer to leave open the question of the reasonableness under all circumstances of a general, minute, exploratory search on general *principles* where the arrest is legal. While it has been held by Fourth Amendment standards that the search of premises under these circumstances is limited by its propinquity to the defendant, and may thus be unreasonable where geographically removed (Agnello v. United States, 269 U. S. 20 (46 SC 4, 70 LE 145, 51 ALR 409)), and while "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope" (Terry v. Ohio, 392 U. S. 1, 18 (88 SC 1868, 20 LE2d 889)), citing Kremen v. United States, 353 U. S. 346 (77 SC 828, 1 LE2d 876) and Go-Bart Importing Co. v. United States, 282 U. S. 344, 356 (51 SC 153, 75 LE 374)), it has also been stated in United States v. Rabinowitz, 339 U. S. 56, 60 (70 SC 430, 94 LE 653): "Yet no one questions the right, without a search warrant, to search the person after a valid arrest. The right to search the person incident to arrest always has been recognized in this country and in England. Weeks v. United States, 232 U. S. 383, 392 (34 SC 341, 58 LE 652, LRA 1915B 834, AC 1915C 1177). Where one had been placed in the custody of the law by valid action of officers, it was not unreasonable to search him." Yet, to be admissible, the evidence must have been obtained by means of a search and seizure reasonably related in scope to the justification for their initiation. Warden v. Hayden, 387 U. S. 294, 310 (87 SC 1642, 18 LE2d 782).

Is the search here, then, justified by the arrest, or did the arrest itself overreach the Constitutional safeguards afforded by our Bill of Rights? At this point we have only the testimony of the two arresting officers, yet it alone raises grave questions as to the reasonableness of the procedure used. While their testimony was that they were directed to a restaurant, they did not enter it and made no inquiry as to whether a disturbance had in fact occurred. They stopped the defendant and his companion while the latter were engaged in the perfectly lawful activity of walking on the

sidewalk and indulging in no furtive or suspicious conduct of any kind. The reason given for leaving their automobile and confronting the youths was that they matched the description given by their fellow policeman in that one had long hair and one had short hair. The attitude is obvious from the following portion of the cross examination: "Q. Now, you said 'people of this kind' and what you really meant was people with long hair? A. Well, if you want to call it that, or hippy type, whatever you want to call it, that's long hair, isn't it?. . . Q. But also, the fact that the boy had long hair had something to do with it, too, didn't it? A. Possibly. Anytime you see a long hair, you get a, it goes along with the rest of them. Q. I mean, you and I are human beings that are normal, and long hair is not, it's indicative of something, a movement other than what you and I may agree with? A. That's the way I see it. . . You can see how I believe." The attitude is also obvious from the severity of the search, which was sufficient to loosen the defendant's pants, and from the statement of one of the officers that he told Holtzendorf, who protested when his pants came loose, to shut up or he'd fill him full of lead.

Again, as stated in Terry v. Ohio, 392 U. S. 1, 16, supra: "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly. The danger in the logic which proceeds upon distinctions between a 'stop' and an 'arrest,' or 'seizure' of the person, and between a 'frisk' and a 'search' is two-fold. It seeks to isolate from constitutional scrutiny the initial

stages of the contact between the policeman and the citizen. And . . . it obscures the utility of limitations upon the scope, as well as the initiation, of police action as a means of constitutional regulation." It must be said that when the police officers alighted from their car, stopped the defendant and his companion, questioned them, and demanded to see the contents of the paper bag, the youths were at that time "seized" or "arrested" within the meaning of the Constitutional standards set by Terry v. Ohio, supra, and Sibron v. New York, 392 U. S. 40 (88 SC 1889, 20 LE2d 917). Since no circumstances whatever existed (as in Terry) to alert them to further investigation of suspected unlawful behavior or of self-defense, and since they were satisfied that the youths were not intoxicated and were committing no other crime in their presence of which their senses could make them cognizant, it is sheer sophistry to say that Holtzendorf volunteered the facts that he was a minor and that he had wine in the paper bag. Would he have made such a statement to any other stranger who accosted him on the street? Surely not, yet this case depends on whether one may be lawfully convicted of possessing a gram of marijuana obtained by a search without warrant which he verbally protested, justified by an arrest without warrant, justified by a crime discovered only by the "voluntary" statement of a 19-year-old defendant after being stopped, seized or detained without any probable cause whatever. "A prisoner in police custody by reason of an illegal arrest [or any other form of detention, overt or subtle] is in no position to refuse to comply with the demands of the officer in whose custody he is placed whether such demand is couched in the language of a polite request or a direct order. If a command, the prisoner is directly forced to comply, and if a request, he is indirectly forced to comply." *Raif v. State,* 109 Ga. App. 354, 358 (136 SE2d 169). And see Gomez v. Wilson, 323 FSupp. 87, 91.

Although adjudication here must rest on the law as it was at the time of the seizure and not as of the present, it is interesting to note that mere possession of a bottle of

wine by a 19-year-old minor has never been an offense against State law. It was prohibited by an ordinance of the City of Brunswick. The seizure occurred on August 18, 1971, when the age of majority was 21. As of July 1, 1972 (Ga. L. 1972, p. 193) the age of majority has been reduced to 18, following a recommendation contained in the Report of the Governor's Commission on Judicial Processes, Dec. 31, 1971, p. 21, which stated in part: "The arrest and criminal conviction of minors between 18 and 21 (many of them returned veterans) for various acts designed to circumvent the legal drinking age, not only [is] unjustified from any logical or moral standpoint but destructive of respect for the law. Young adults believe that a system which trusts them with a machine gun and a ballot, but not a bottle of beer, is irrational at best. . . It seems completely inconsistent that this state has long bestowed on persons 18 years of age the right to vote—a right of citizenship theoretically requiring the highest exercise of sound discretion—and denies to them all other rights of citizenship not specifically bestowed."

The officers had no warrant to arrest or search; no crime was being committed in their presence of which any knowledge was presented to their senses, and the record as a whole indicates that the recovery of the bottle of wine, although no doubt honestly considered by the officers to be a "voluntary" surrender, was strongly tainted by circumstances amounting to duress.

What then of the marijuana uncovered by the subsequent search? This case is practically identical with People v. Collins, 83 Cal. Rptr. 179 (463 P2d 403), except that the reason for the "stop and frisk" in that case was much better documented by the fact that the officers stopped a man meeting a general description of a grand theft auto suspect, and testified that the reason for stopping him included his furtive actions upon their observation of him. The suspect was meticulously searched, and a plastic bag loosely packed with marijuana removed from his pocket after a "little lump" had been felt. He was then charged with drug pos-

session. Contrasting these facts with those in Sibron v. New York, 392 U. S. 40, supra, where the suspects' conduct suggested present criminal activity and the search was confined to a pat-down of the outer clothing until a weapon was actually felt, the court held that merely feeling a soft object in Collins' pocket during a pat-down, absent unusual circumstances, did not warrant the officer's intrusion into his pocket to retrieve it. "An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down. Only then can judges satisfy the Fourth Amendment's requirement of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts." People v. Collins, 83 Cal. Rptr. 179, 182, supra, citing Terry v. Ohio, supra.

The trial court erred in denying the defendant's motion to suppress evidence of the discovery of marijuana under all circumstances of this case.

*Judgment reversed. Clark, J., concurs. Jordan, P. J., concurs in the judgment.*