## 49878. THE STATE v. KOON.

CLARK, Judge.
"When constabulary duty's to be done
A policeman's lot is not a happy one."
This song of the *Shammes*[1] from "The Pirates of Penzance" is applicable to the plight of two Columbus policemen who made a warrantless arrest which resulted in the state taking this intermediate appeal from the grant of a defense motion to suppress a pistol taken from the pocket of the accused during the arrest.

The hearing transcript shows testimony limited to the two officers who responded to a call at a restaurant. As

---

[1]Slang synonym for policemen, first used in Damon Runyon's Broadway stories; it is derived from the Yiddish word for a synagogue sexton.

the testimony of both patrolmen was substantially the same, we quote pertinent portions from the first officer to reach the scene. He testified: "There were approximately five or six people inside. Inside also seated on the west side of the building there was a white male and a white female . . . As soon as I entered, she sprung from her seat and run to my presence just inside the doorway. She immediately run behind my person, run behind me hollering, 'Save me. The man over there is going to kill me.' At this time Officer Howard, he just was entering the door. As I proceeded on out into the middle of the floor closer to where Mr. Koon was, she left me and run to Officer Howard, run directly behind Officer Howard and told him the same thing. She was crying. She was trembling. She was — to be extremely, extremely upset. Trembling. Her legs were trembling. Her arms were trembling. Tears were streaming down her face. She asked us to save her numerous times, that he had promised to kill her. We asked her what the trouble was. She said that they had had sex and that he had a gun and was going to kill her. That he had made her have sex at his apartment, or his house, residence here in Columbus, and later had come down here to the Buccaneer where she had went to the bathroom and had called to the police. At that time, we arrived. I went on over to Mr. Koon at this time." (T. 8, 9).

Upon questioning Koon while making an apparent attempt to be a peacemaker in what the officer considered to be a "lovers' quarrel or spat," the policeman was unable to elicit a direct reply excepting in one instance. That exception was presentation of a driver's license when identification was requested. The difficulty crescendoed during the interrogation with the climax being described in the officer's words: "At this time, we asked him several times and he refused to answer any of our questions, and we advised him that he would be placed under arrest or be taken downtown if he didn't want to cooperate with us there. He stated there wasn't nobody going to take him. At this time, we went ahead and arrested him and told him he was definitely under arrest, to step outside. He refused. We asked him twice more, told him twice more, that he was under arrest, to step outside. At this time he refused for the third and final time. At this time Officer Howard

took his right arm and I took his left and started out the door." (T. 10).

While this forced removal was occurring, an altercation developed between Koon and Officer Howard, during which Koon was severely beaten while being subdued. The non-participating officer concluded his testimony thusly: "We placed the handcuffs on him. We took him out to the car. Just before entering the back of the police car, just as the girl said, we found a .22 caliber six-shot revolver in his right rear back pocket. The girl had told us several times that it was there, including the first time that we had met with her, that he had beat her. She said that he had a gun on him." (T. 11).

On cross examination defense counsel developed that "He [Koon] was told at the time of his arrest he was arrested for disorderly conduct." The officer further stated this charge was based on the female's complaint as to the occurrence which had brought about her telephone call to police headquarters. Additional charges were made of resisting arrest, carrying a concealed weapon, and possession of a pistol without a license. The case below now involves the latter two misdemeanors.

The transcript shows the eminent trial judge based his order on the "disorderly conduct," a municipal ordinance violation, and the fact that it had not occurred in the presence of the policemen, the court's statement being: "I think, in this case, the arrest could probably have been made only if a warrant had been taken out before any physical restraint itself was exercised upon the liberty of this defendant." *Held:*

1. "No one who properly appreciates the sacredness of personal liberty and the jealousy of the law in guarding the same can doubt that as a general rule the law requires a warrant in order to make an arrest legal." *Thomas v. State,* 91 Ga. 204, 206 (18 SE 305). There are only three exceptions to this general rule, they being stated in Code § 27-207 to be "if the offense is committed in his [the officer's] presence, or the offender is endeavoring to escape, or for other cause there is likely to be failure of justice for want of an officer to issue a warrant." That general rule applies to violations of municipal ordinances. *Porter v. State,* 124 Ga. 297 (52 SE 283). None of these

three exceptions is shown in the case sub judice.

Both officers testifed the arrest was made on a basis of "disorderly conduct." In asserting Koon to have violated such city law, they do not charge Koon to have committed the offense in their presence. "While 'impudence' is sometimes sufficient provocation to anger, it can never furnish justification to an officer of the law for depriving a citizen of his sacred right of liberty." *Jenkins v. State,* 3 Ga. App. 146, 148 (59 SE 435). Even if the ordinance violation had occurred in their presence, it should be noted that "As a general rule, a municipal peace officer in whose presence a town ordinance has been violated has no lawful authority, without a warrant to arrest the offender when he has had ample time and opportunity since the commission of the offense to procure a warrant." *Yates v. State,* 127 Ga. 818, 813 (4) (56 SE 1017).

Both officers testified that "disorderly conduct" was based upon the paramour's complaint concerning the events which had occurred previously at defendant's residence. The situation was thus similar to those in *Smith v. State,* 84 Ga. App. 79 (65 SE2d 709) and *Ronemous v. State,* 87 Ga. App. 588 (74 SE2d 676) where this court ruled warrantless arrests upon complaints after the offenses had occurred were illegal.

On the basis of the record the trial judge was correct in ruling that a warrant is required for arrest when the offense is limited to violation of a municipal ordinance if the illegal conduct does not occur in the presence of the officer.

Appellant contends that the cases of *Cobb v. Bailey,* 35 Ga. App. 302 (133 SE 42) and *Ramsey v. State,* 92 Ga. 53 (17 SE 613) are akin to the situation here. Such reliance is misplaced. In *Cobb* the offense, a threat, was made in the presence of the policeman. In the *Ramsey* case the complainant's cries for help while the offense, wife beating, was being committed were heard by the approaching officer.

2. Appellant argues that the handling of this case by the police officers comes within the "stop and frisk" procedure as described and allowed in Terry v. Ohio, 392 U. S. 1 (88 SC 1869, 20 LE2d 889) as redefined in Adams v.

Williams, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) and that such standards were adopted by the Georgia courts as permissible police action in *Baker v. State,* 230 Ga. 741 (199 SE2d 252). In doing so, the state argues that we should make our decision on "what actually happened without being bound by whatever theories or transactions might have existed in the minds of the officers." (Brief of appellant, p. 12). The fallacy in this contention lies in the fact that the illegal arrest was made prior to the "frisk." We recognize that the police officers had the right to "pat down" the accused to determine if the complainant was truthful in her hysterical report that the male friend with whom she was dining in a public place possessed a pistol upon his person. But that did not occur here. The arrest came first, prior to any frisk. After an arrest probable cause cannot then be established by a subsequent search. *Stanley v. State,* 129 Ga. App. 759 (201 SE2d 182).

3. Where the arrest is illegal then evidence obtained after the illegal arrest is not admissible. *Raif v. State,* 109 Ga. App. 354 (136 SE2d 169).

*Judgment affirmed. Bell, C. J., concurs. Quillian, J., concurs in the judgment only.*

SUBMITTED NOVEMBER 4, 1974 — DECIDED JANUARY 7, 1975.

*Robert G. Johnston, III, Assistant Solicitor, E. H. Polleys, Jr.,* for appellant.

*Elkins, Flournoy & Garner, James A. Elkins, Jr.,* for appellee.