## 52763. HILL v. THE STATE.

CLARK, Judge.

Did the policeman's detention of appellant constitute a legal arrest? If not, did its illegality taint the camera, a stolen item which served as the basis for a burglary charge, and was found during a search with permission, of the appellant's backpack? Did the illegality of the original detention make inadmissible appellant's subsequent incriminating admissions made after Miranda warnings? These are the questions presented in this appeal from a burglary conviction.

Here is what happened:

While on routine patrol, Officer Mills received a radio message from another patrol car that two suspects, who appeared to be young hitchhikers, were acting in a suspicious manner in that they appeared nervous when they spotted the patrol car. Mills drove to the area and saw the two young men on the sidewalk adjacent to a motel known to be a stopping place for runaways, vagrants, and fugitives. "When they saw me they acted nervous again and one of them looked very young." As the two were walking away the officer stopped them and inquired as to identification documents. Although appellant had the necessary identification the 17-year-old companion had none. "I told them at that time that I wanted to run a check

on both of them, I wanted to run an NCIC on Mr. Hill."
(The initials refer to the National Crime Information
Center). "I told them I was going to have to take Mr. Stip
down to headquarters . . . the young one, and call his
parents, see if they knew where he was. And, Mr. Hill, I
told him I wanted to take him down and run the NCIC
check, and if he wanted to go — if they both wanted to get
in and go, take them together, and if everything turned up
O.K., they could leave together, and that agreed with both
of them."

At police headquarters the NCIC report indicated
that an individual bearing the same name as appellant
was wanted elsewhere. Upon examination of his physical
characteristics it was apparent that appellant was not the
same person described on the computer.

Both were then escorted to a back room so that the
youngster's parents could be called. Officer Mills
continued to question them and then asked if he could
examine their luggage. They consented. In his search of
appellant's backpack the policeman discovered a
Keystone Everflash camera in its original box. As this
matched the description of a camera taken in a burglary
on the previous day, the officer informed appellant that he
was under arrest for burglary.

Until this point in time Officer Mills testified there
had been no detention, that appellant voluntarily
accompanied him to police headquarters and that
appellant could have departed therefrom at any time he
wished to do so.

After Miranda warnings had been given by Officer
Mills and, later, after a couple of hours in a jail cell, the
questioning was continued by a detective who also
provided the prefatory Miranda warnings. During the
latter interrogation appellant gave an inculpatory
statement which he later signed. Afterwards appellant
accompanied the detective in his patrol car to a trash can
at a service station where he had discarded a pistol
mentioned in his statement. *Held:*

1. Prior to trial appellant moved to suppress both the
physical evidence taken from him and also the statements
made by him. The motion was denied. The basis of the
motion was that when Officer Mills stopped him on the

street it constituted an illegal arrest, and that the search with permission at the police station was thereby unlawful. The state, in turn, contends that appellant was not arrested until after discovery of the camera.

The situation here is similar to that in *Holtzendorf v. State,* 125 Ga. App. 747, 749 (188 SE2d 879) where two police officers stopped the defendant and his friend while they "were engaged in the perfectly lawful activity of walking on the sidewalk and indulging in no furtive or suspicious conduct of any kind." Indeed, Officer Mills testified at the suppression hearing that he stopped the two just because another officer told him they "Kind of looked like they got nervous when they saw me." (Trans. p. 1). He said he had no reason to believe that either of the two had committed a crime nor was he suspicious enough to take out a warrant for their arrest. Even after stopping them he did not develop such suspicions. "I didn't have any suspicion that they had committed a crime. But I had a suspicion that everything wasn't adding up to what they were telling me." (Tr. P. 9). "[T]he main reason that I picked them up and carried them in to start with was a seventeen-year-old plus the fact that I was going to run an NCIC check . . ." (Tr. p. 10). All of this occurred during daylight hours.

"[T]o justify a warrantless intrusion of this nature, the state must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion." *Brisbane v. State,* 233 Ga. 339, 341 (211 SE2d 294). Unlike the situation in *Brisbane,* however, no such articulable facts exist herein. Mere suspicion that two young people look nervous and that "things didn't add up" is insufficient to warrant the intrusion that occurred. There was not "even the slightest of articulable suspicions arising as inferences from conduct, or from knowledge arising out of the totality of circumstances." *Brooks v. State,* 129 Ga. App. 109, 111 (198 SE2d 892). There was no probable cause for the arrest, there was no arrest warrant, no criminal offense was committed in the presence of the officer, and there was no attempt to escape. See *Kelly v. State,* 129 Ga. App. 131, 132 (198 SE2d 910) and *Brooks v. State,* supra.

"It must be recognized that whenever a police officer

accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889) (1968). See Sibron v. New York, 392 U.S. 40 (88 SC 1889, 20 LE2d 917) (1968). When Officer Mills, without any basis for suspicion other than the fact the two men appeared nervous, stopped the two to question them and to run a national crime check on them, the men were arrested or seized within the meaning of the standards defined in Terry and Sibron. See *Holtzendorf v. State,* 125 Ga. App. 747, supra; *Kelley v. State,* 129 Ga. App. 131, supra, (2).

2. Was there a search of the appellant? If so, was it legal? The state asserts that appellant gave Officer Mills permission to look through his backpack. In *Raif v. State,* 109 Ga. App. 354, 358 (136 SE2d 169), Judge Nichols (now Chief Justice) said: "A prisoner in police custody by reason of an illegal arrest is in no position to refuse to comply with the demands of the officer in whose custody he is placed whether such demand is couched in the language of a polite request or a direct order. If a command, the prisoner is directly forced to comply, and if a request, he is indirectly forced to comply." Under the facts of this case we cannot accept the state's contention that the appellant's consent to the search was truly voluntary and that the search was lawful. See *Holtzendorf v. State,* supra.

3. In order for the search to have been valid the arrest must have been legal. *Johnson v. State,* 111 Ga. App. 298 (2) (141 SE2d 574). It was not. What would have happened if the two hitchhikers had refused to accompany the policeman to headquarters? The assertion that they were not physically detained and were free to refuse to go with the policeman lacks reality. Similarly contrary to reality is the contention that the consent to search was voluntary because of the officer's subjective view that appellant was free to depart. The search cannot supply probable cause for and thereby validate the subsequent "formal" arrest for burglary. Where no reasonable cause for the defendant's arrest existed when the search was made and it was not made in connection with or incident to a lawful arrest without a warrant then the search was unlawful. *Brewer v. State,* 129 Ga. App. 118 (1) (199 SE2d

109). "It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. E.g., Henry v. United States, 361 U.S. 98 (1959); Johnson v. United States, 333 U.S. 10, 16-17 (1948)." Sibron v. New York, 392 U.S. 40, 63, supra.

The motion to suppress the evidence seized during the unlawful search should have been granted, and it was error to admit it into evidence. "The obtaining of the evidence was tainted by the illegal arrest." *Kelly v. State,* 129 Ga. App. 131, 133 ( 3), supra.

4. Similarly, the defendant's statements to the police and the pistol should have been suppressed as evidence. Although a Jackson-Denno hearing was held prior to commencement of the trial upon the indictment to determine voluntariness of the statements, this does not of itself dispose of the issue. The trial court had already erroneously ruled that the arrest and subsequent search were lawful. *Brewer v. State,* 129 Ga. App. 118, 122 (3), supra, ruled that "[S]ince the search and his arrest were illegal, this admission being given during his illegal detention is tainted and is therefore inadmissible."

In *LaRue v. State,* 137 Ga. App. 762 (224 SE2d 837) we held that in the absence of a contrary showing by the state, a defendant's testimony in a case after the admission into evidence of illegally seized evidence is impelled by that erroneous admission. At p. 767 we noted, "It is obvious that defendant would not have attempted to justify his possession of the drugs had the state been unable to prove possession in the first place." For a somewhat similar situation see *Smith v. State,* 140 Ga. App. 94. *LaRue* is analagous to the situation instanter in that appellant would not have made the statements had he not been illegally detained and made the subject of an unlawful search and seizure. As in *Holtzendorf v. State,* 125 Ga. App. 747, 751, supra, "it is sheer sophistry to say that [defendant] volunteered the facts. . ." See *Raif v. State,* 109 Ga. App. 354, 358, supra.

That appellant was given his Miranda rights before he made the statements is again not dispositive. Justice Blackmun dealt with this issue in the 1975 decision of Brown v. Illinois, 422 U.S. 590 (95 SC 2254, 45 LE2d 416). Brown was arrested without probable cause and without a

warrant. Following his arrest he made two inculpatory statements after having been informed as to his Miranda rights. The Supreme Court held that Miranda warnings do not per se break the causal chain running from the primary illegality. "The Miranda warnings in no way inform a person of his Fourth Amendment rights, including his right to be released from unlawful custody following an arrest without a warrant or without probable cause." 422 U.S. at p. 601, n. 6. "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun [v. United States, 371 U.S. 471 (83 SC 407, 9 LE2d 441) (1963)] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486. Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." 422 U.S. at 602.

Brown held that each case is to be judged individually on its facts, the burden being on the prosecution to show the admissibility of such statements. Review of the transcripts and record in the case sub judice shows that the state was unable to carry its burden of showing that the statements were not tainted by the primary illegality. They were made shortly after an illegal arrest and illegal detention during which an unlawful search revealed what appeared to be stolen goods. As in *LaRue v. State,* 137 Ga. App. 762, supra, and *Holtenzdorf v. State,* 125 Ga. App. 747, supra, there is little to support the contention that the statements, though possibly voluntary under the Fifth Amendment, were voluntary under the Fourth Amendment. The appellant's voluntariness in showing the police where the pistol had been discarded is as suspect and as tainted by the primary illegality as his other statements. The statements and the pistol should have been suppressed and excluded from evidence. See *State v. Koon,* 133 Ga. App. 685 (3) (211 SE2d 924); *Kelly v. State,* 129 Ga. App. 131 (3), supra; *Brewer v. State,* 129 Ga. App. 118, 122, supra; *Raif v. State,* 109 Ga. App. 354, supra.

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

SUBMITTED OCTOBER 6, 1976 — DECIDED OCTOBER 22, 1976.

*Saliba & Newsom, Walter F. Newsom,* for appellant.
*H. Lamar Cole, District Attorney, Richard W. Shelton, Assistant District Attorney,* for appellee.