## 63840. THE STATE v. KEY.

POPE, Judge.
This is an appeal by the state from the grant of a motion to suppress evidence filed by appellee, Lonnie O. Key, Jr. The material evidence at the motion to suppress hearing consisted solely of the testimony of the arresting officer, which is summarized below.

The officer, a Bibb County Deputy Sheriff, was dispatched by radio to investigate a suspicious person in a car parked on a roadside in Macon at approximately 2:40 a.m. on August 4, 1981. Upon arrival at the reported location, the officer observed a Chevrolet Camaro parked as described with two white males inside. He approached the car and asked the occupants their reason for being there. They responded that they were waiting for a girl to come home. The officer then asked them to exit the car and show him some identification, which they did.

Seeing an object in the back seat of the car he suspected to be a person hiding under a blanket, the officer again approached the car and "reached in and checked" to see if his suspicion was correct. It was not. The suspicious object was a sleeping bag. The officer then observed an ice chest sitting in the floorboard and "checked it." He found nothing but a can of beer inside. He also saw another beer can on the floorboard on the driver's side.

The officer then walked around to the driver's side of the car

and, "looking in through the window" with the aid of his flashlight, he "observed a clear plastic bag with a green, leafy substance laying [sic] in the floorboard in front of the driver's seat." He entered the car and seized the suspected marijuana. He then searched the passenger compartment of the car and found a quantity of suspected marijuana seeds, a hand rolled cigarette and another plastic bag full of suspected marijuana. The officer told appellant to open the trunk of the car, and five more bags of suspected marijuana were found there. Appellant and his companion were then placed under arrest.

The propriety of this search and seizure depends upon the propriety of the manner in which the initial suspected marijuana was found. If that bag of suspected marijuana was lawfully found and seized, it then would have furnished the probable cause for believing more marijuana was contained in the car, thus justifying the search of the entire vehicle and its contents. See United States v. Ross, —— U. S. —— (102 SC 386, 72 LE2d 572) (1982), Conversely, if the initial find of suspected marijuana was the product of an illegal search, that evidence and the evidence seized as a result of the subsequent search stemming from the initial find would be inadmissible.

Under the "plain view" doctrine, a law enforcement officer has a right to visually search the entirety of a car from his vantage point on a street or roadside. See State v. Scott, 159 Ga. App. 869 (285 SE2d 599) (1982). The viewing need not be motivated by any articulable suspicion. On the contrary, law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e.g., a street or roadside). Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence. State v. Scott, supra. Moreover, any additional evidence discovered within the confines of United States v. Ross, supra, would also be admissible evidence.

The only difficulty we find with the search and seizure in this case is that the discovery of the suspected marijuana was subsequent to an unlawful intrusion into the car, that is, the search of the cooler. Whereas the reaching in and checking of the sleeping bag in the back seat was justifiable as a precautionary measure, the opening of the cooler was unmistakably an unlawful search for incriminating evidence.[1] Because the officer had no probable cause to believe the

---

[1] That the officer reached into the car and opened the cooler is a conclusion on our part based upon what we consider to be the most reasonable interpretation of the officer's testimony that he "checked" the cooler on the floorboard. Had we interpreted "checked" as meaning that he merely looked inside an already open cooler, there would be no doubt that the search and seizure in this case was proper.

car contained contraband until he actually saw it later, he was not then authorized to enter the space of the car in order to search for it.

The issue then is whether this unlawful intrusion so tainted the search procedure that the contraband found later in plain view from outside of the car should be excluded as evidence. We hold that this momentary unlawful intrusion of the automobile space, which produced no evidence and was not a contributing factor in the discovery of the contraband, was an insufficient wrong, in and of itself, to require the suppression of the contraband.

*Judgment reversed. Deen, P. J., Banke and Birdsong, JJ., concur. McMurray, P. J., and Carley, J., concur specially. Quillian, C. J., Shulman, P. J., and Sognier, J., dissent.*

DECIDED OCTOBER 25, 1982 —
REHEARING DENIED NOVEMBER 17, 1982 —

*Willis B. Sparks III, District Attorney, G. F. Peterman III, Assistant District Attorney,* for appellant.
*O. L. Crumbley,* for appellee.

CARLEY, Judge, concurring specially.

I completely agree with the majority that the trial court erred in granting the motion to suppress evidence in this case. Further, if I could accept the analysis of the factual circumstances postulated by the majority, I could adopt in toto the rationale of the majority opinion. In other words, if the officer actually opened the cooler, this would be, as stated by the majority, "an unlawful search for incriminating evidence." If this were true, the majority would be absolutely correct in also holding that such a "momentary unlawful intrusion of the automobile space, which produced no evidence and was not a contributing factor in the discovery of the contraband, was an insufficient wrong, in and of itself, to require the suppression of the contraband."

However, the majority's finding that the officer's action was "an unlawful search for incriminating evidence" is explained by footnote 1 to the majority opinion as follows: "That the officer reached into the car and opened the cooler is a conclusion on our part based upon what we consider to be the most reasonable interpretation of the officer's testimony that he 'checked' the cooler on the floorboard. Had we interpreted 'checked' as meaning that he merely looked inside an already open cooler, there would be no doubt that the search and seizure in this case was proper." I am unable to accept the majority's "conclusion" that "the most reasonable interpretation of the officer's

testimony that he 'checked' the cooler on the floorboard" is that the officer actually reached into the car and physically opened the cooler. In this connection, the trial court, in its written findings of fact, stated as follows: "On August 4th, 1981, at approximately 2:40 A.M., Bibb County Sheriff's Department Deputy Anthony Strickland was dispatched by the radio to Neal Drive in Macon, Bibb County, Georgia for the purpose of investigating what had been determined to be a suspicious vehicle with suspicious persons therein. On arriving on Neal Drive on the morning in question, Officer Strickland observed a green Chevrolet Camaro parked on the shoulder of the road on Neal Drive. On approaching the vehicle, Officer Strickland determined that two males were sitting in the vehicle. The person under the driver's side, the steering column, was determined to be Lonnie O. Key, Jr., and the other person was a passenger in the vehicle. Officer Strickland asked both males to exit the vehicle and asked them to identify themselves at the rear of the vehicle, and they did so. After the two males properly identified themselves, Officer Strickland began a walk around the automobile wherein he *observed through one of the windows an ice chest with one beer can.* Also on walking around the vehicle, Officer Strickland, on the driver's side of the vehicle, observed a clear plastic bag that contained what he described as a green, leafy material, which he believed to be marijuana, that was in plain view." (Emphasis supplied.)

It is clear the trial judge, who heard the testimony of the witness and observed his demeanor, concluded that the officer's observation (that the ice chest contained one beer can) was made "through one of the windows." Therefore, according to the trial court, the method of observing the contents of the ice chest was the same as that utilized to discover the bag of marijuana on the floor and, thus, both objects of observation were in "plain view." "Factual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous." *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974). Since I believe that we are bound by the trial judge's factual determination in this case, I find no "unlawful search for incriminating evidence" and, for that reason, I would reverse the trial court's suppression of the evidence.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

SHULMAN, Presiding Judge, dissenting.

Because I have concluded that the search which uncovered the contraband in this case followed an illegal arrest and was not the

result of a proper application of the "plain view" doctrine, I must respectfully dissent from the majority's reversal of the trial court's suppression of the evidence.

1. I do not question the legality of the police officer's initial detention of defendant and his companion. The removal of the two young men from the car and their placement behind the vehicle were reasonable actions taken by the lone officer to allay any fears he may have had for his personal safety. Even the officer's intrusion into the back seat of the car to investigate the suspicious sleeping bag was justifiable. However, once that suspicion had been satisfied and the officer had demanded of and received from defendant and his companion drivers' licenses which contained names matching the previous oral identification the young men had given, the officer stepped into illegal waters by further detaining defendant, thus effecting an illegal arrest, and by conducting a more intensive search of the automobile. *State v. Smith,* 164 Ga. App. 142 (2) (296 SE2d 141) (decided October 13, 1982); *Radowick v. State,* 145 Ga. App. 231 (244 SE2d 346). See Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889).

This court's decision in *Radowick* presents an overall view of a "Terry" stop as a "brief stop limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification, licensing of a driver and a vehicle if appropriate, a protective 'pat-down' of the outer surface of clothing for weapons if the officer has reasonable apprehension that the person is armed or dangerous, and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop." *Radowick,* supra, p. 237. This court went on to say that "it is evident that after the 'brief stop' authorized by Terry, absent additional corroborative evidence of the criminality asserted in the original information, the authorized 'momentary detention' is transformed into 'unauthorized detention' by reason of the 'intolerable intensity' of the investigative seizure, and an illegal arrest comes into being." Id., p. 238.

Although the detention in the present case was for a shorter length of time than that involved in *Radowick,* the result was exactly the same — the initial legal detention developed into an illegal arrest. "Where no reasonable cause for the defendant's arrest existed when the search was made and it was not made in connection with or incident to a lawful arrest without a warrant then the search was unlawful. [Cit.] . . . 'The obtaining of the evidence was tainted by the illegal arrest.' [Cit.]" *Hill v. State,* 140 Ga. App. 121 (3) (230 SE2d 336). His fears and suspicions allayed, the officer in the present case should have permitted the young men to return to their car and leave.

Instead, he illegally detained them while he satisfied his idle curiosity. Mere satiation of an officer's curiosity is not a valid basis for a search.

2. The majority bases its reversal on the conclusion that some of the contraband was discovered in the "plain view" of the officer. I am in full agreement with the view of this doctrine espoused by the majority in its opinion at page 412: "law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be (e. g., a street or roadside). Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence. [Cit.]" That doctrine, however, is inapplicable to the case at bar because the officer had no "legitimate reason" to look into the automobile once he had quieted his suspicions about the sleeping bag. Thus, anything found while the officer conducted a search for curiosity's sake must be suppressed, as the trial court ruled. Because I would uphold the trial court's grant of defendant's motion to suppress, I must dissent from the majority opinion.

I am authorized to state that Chief Judge Quillian joins in this dissent.

SOGNIER, Judge, dissenting.

I respectfully dissent. Motions to suppress evidence obtained in violation of an individual's Fourth Amendment rights arose as a practical means of insuring such rights against the intrusion of overzealous police. See Elkins v. United States, 364 U. S. 206, 217 (80 SC 1437, 4 LE2d 1669). I view the evidence in this case in the same manner as the majority, that is, that when the police officer "checked" the cooler, he opened and looked into it. The majority view this, as do I, as an unwarranted invasion of appellee's rights. I diverge from the majority opinion at this point, however, as I do not believe we can say that in one instant the police officer was engaged in an illegal search and the next instant was engaged in a legal search under the "plain view" doctrine. See generally Wong Sun v. United States, 371 U. S. 471, 485 (83 SC 407, 9 LE2d 441). To do so is to erode the purpose of a motion to suppress as a sanction against illegally obtained evidence. In effect, it is an effort to graft a healthy limb onto a "poisonous tree."

Further, in regard to application of the "plain view" doctrine, the Supreme Court of the United States has held that "the 'plain view' doctrine *may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.*" (Emphasis supplied.) Coolidge v. New Hampshire 403

U. S. 443, 466 (91 SC 2022, 29 LE2d 564).

Applying the rule set forth in Coolidge to the facts of the instant case, I note initially that the police officer had no prior justification or probable cause for an intrusion into the car to examine the cooler. Further, the "plain view" doctrine is not applicable, for the police officer's finding of the marijuana was not inadvertent. Coolidge, supra, at 468-469. On the contrary, it was the result of an item by item exploratory search, both visual and manual, of the interior of appellant's car, and as stated in Coolidge, the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating is found. See also, Stanley v. Georgia, 394 U. S. 557, 571-572 (89 SC 1243, 22 LE2d 542). This is exactly what the police officer in the instant case was doing. When he found nothing incriminating in the cooler he continued his illegal search of the car until he found something which appeared to be incriminating. Such conduct is prohibited by Coolidge, supra. For these reasons I would affirm the ruling of the trial court.