29015. WEST v. THE STATE.

JORDAN, Justice.

The appellant was convicted of murder and armed robbery and sentenced to consecutive terms of life imprisonment. Appellant contends that the verdict was not supported by the evidence and that the court erred in admitting certain evidence.

The essential facts are as follows: Allen DeLoach was killed on January 20, 1973. The foundation of the state's case is the testimony of an accomplice, John Junior Williams. Williams testified that on the day of the murder he borrowed a gun, identified as a "Clerk First" .32 caliber pistol, from John White. About 7:15 that evening he had a conversation with appellant and one

Jackson at which appellant and Jackson agreed to "get" DeLoach, and Williams agreed to pick them up afterwards. Appellant and Jackson left, and Williams waited ten or fifteen minutes and drove past the Red and White Supermarket, which was operated by DeLoach. He parked his car and walked toward the store. At that time he saw DeLoach lock the door to his store, walk to his truck, open the door to the truck, and place something inside. DeLoach then turned and began to urinate. Jackson approached DeLoach and Williams heard a shot, saw Jackson run, and heard two more shots. DeLoach ran toward Jackson after the shots were fired. Williams testified that he saw the appellant in the parking lot during this period of time.

Williams returned to his car, drove a couple of blocks, and picked up Jackson and appellant. They asked to go to the "Stag Club," but changed their minds and were left at the "Wash House." Williams went home; fifteen or twenty minutes later, he was driving in the vicinity and was stopped by appellant who gave him $20 "for your trouble." Such was the testimony of John Junior Williams.

Appellant denied this and stated that on the night in question he had been playing pool and "messing around" until about 9:00 p.m., that he had seen and been with many people, that he went home to change clothes, and went to the "Stag Club" arriving there alone at approximately 9:20 p.m.

The circumstances relied upon by the state to place the appellant at the scene of the crime, independent of Williams' testimony, are the following: DeLoach was killed with a .32 caliber "Clerk First" pistol on the day of the murder. Sheriff Edward Shelley found a .32 caliber "Clerk First" pistol under the headrest of an automobile in which appellant was seated. At the time, appellant was sitting in the right rear of the automobile directly behind the headrest within arm's reach of the pistol. Hinton Moore, self-employed at the "Stag Club," did not see appellant until 10:30 p.m. on the night in question. At that time, he saw appellant and Jackson enter the club together. He stated: "They came through the door and went to the bathroom." Harry Coursey, a special

investigator, identified a certain armband as one found near the victim. John White testified that he had seen appellant wearing a similar armband.

Other evidence was introduced for the purpose of showing a robbery was committed, and showing that John Williams' testimony was credible. Hilton Quick testified that he sold gas to DeLoach on the night of the murder. DeLoach paid for the gas with a twenty dollar bill and put the change in his pocket. DeLoach left the service station at 9:00 p.m. and drove next door to a laundromat, which is located six or seven blocks from the Red and White Grocery Store. DeLoach's truck was at the laundromat when Quick left the service station at 9:15 p.m. Ann Thomason testified that she drove by the Red and White at about 9:40 p.m. and noticed that the night lights were on and that DeLoach's truck was parked in front of the store with the door open. Investigator Coursey testified that he found blood on the ground 30 feet from the victim's body. The victim's pockets were turned inside out, and the pants were unzipped. This tended to substantiate Williams' testimony, as to the open door of the truck, the time of the crime and the fact that DeLoach was urinating when Jackson appeared; the pool of blood 30 feet from the victim tended to show that he was shot in one place, and ran toward Jackson until he fell to the ground in a different place. *Held:*

1. Appellant contends that the pistol should not have been admitted into evidence. The pistol was found in an automobile in which appellant was a passenger, directly in front of the seat that he occupied.

White admitted giving Williams a "Clerk First" .32 caliber pistol the day of the shooting. White testified that the pistol in evidence was the same make and model as the pistol which he gave Williams; however he could not make positive identification because a certain screw was larger than he remembered.

Williams testified that he could not identify the pistol because "the gun I got from . . . White, it didn't have the screw," but added that he did not pay too much attention to the gun.

Dr. Larry B. Howard, Director of the Crime Laboratory of the State of Georgia, testified that the

ballistics tests which he conducted were not conclusive as to matching the bullet extracted from DeLoach's body with the pistol in evidence but did testify that the bullet was fired from a "Clerk First" pistol. We are of the opinion that under these circumstances the pistol was relevant evidence; it was for the jury to determine its weight and effect.

2. Three enumerations of error are on the general grounds that the evidence does not support the verdict. Appellant relies on Code § 38-121 which provides that the testimony of a single witness is generally sufficient to establish a fact except where the only witness is an accomplice, in which case corroborating circumstances may dispense with another witness. Appellant contends that no such corroborating facts and circumstances were produced by the state.

"The quantum of testimony and its sufficiency to corroborate the testimony of an accomplice before a jury is a matter addressed entirely to the jury itself." *Brown v. State*, 163 Ga. 684, 691 (137 SE 31).

In this case the jury could consider and rationally conclude that the pistol found near appellant and placed in evidence was the murder weapon, that the armband belonged to the appellant, that the murder was committed between 9:15 p.m. and 9:40 p.m. and that appellant did not arrive at the "Stag Club" until 10:30 p.m., in the company of Jackson. Alternatively, had the jury believed appellant's testimony that he arrived at the "Stag Club" at "9:20 or 9:45," they would have been justified in finding him not guilty.

The law is settled in Georgia that the corroborating facts or circumstances must connect the defendant to crime or lead to the inference that he is guilty, and that such corroboration must be *independent* of the accomplice's testimony. *Allen v. State*, 215 Ga. 455 (111 SE2d 70); *Price v. State*, 208 Ga. 695 (69 SE2d 253).

Although the rules are settled we feel constrained to comment further upon them in light of language found in two recent cases, *Pitts v. State*, 128 Ga. App. 434 (197 SE2d 495); *Quaid v. State*, 132 Ga. App. 478. In *Pitts*, the majority of the court stated the following: "The law specifically lays down the rule that if the accomplice is

corroborated in material parts of his testimony, then he may be believed by the jury as to other material parts as to which there is no corroboration . . . In other words, if the accomplice is shown to be truthful (corroborated) as to certain material matters he may be believed without corroboration as to other material matters."

This statement must be viewed in the context of Code § 38-121. When an accomplice's testimony is corroborated in material part, other uncorroborated testimony may be believed by the jury, with one important exception. Under § 38-121, testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of the accomplice. One who is guilty of a crime in which he participated will always be able to relate the facts of the case and if the corroboration goes only to the truth of that history, without identifying the person accused, it is really no corroboration at all.

Therefore, a distinction must be made between evidence which tends to prove the truth of the accomplice's general testimony and that which tends to prove the identity and participation of the accused. With regard to the former, the rule as stated by the Court of Appeals, is accurate. This means that an accomplice's testimony is more believable when it is corroborated in material part. But insofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the *accused* with the crime.

Simply because an accomplice's testimony is corroborated in most details, it does not follow that his testimony alone as to the identity and participation of the accused is sufficient to justify conviction.

In the present case, the evidence presented by the state concerning the location of the body, the open door to the truck, and the unzipped trousers all corroborated John Williams' testimony as to what happened; such corroboration makes Williams' testimony more credible. However, this evidence does not bear on the identity of the accused. See *Blois v. State,* 92 Ga. 584 (20 SE 12). On the other hand, the testimony conerning the gun, the armband, and the time of arrival at the "Stag Club" not

only corroborated the testimony of Williams, but also, independent of that testimony, tended to show the identity and participation of the accused.

In other words, if the only evidence presented by the state was that which related to the location of the body, the open door to the truck, and the unzipped trousers, there would not be sufficient evidence to convict the accused. Although Williams would be corroborated in material part, the jury would not be justified in believing the accomplice as to that other material part which related to the identity of the accused.

3. Appellant assigns error to the admission of the testimony of Edward Skelley, contending that it was irrelevant and prejudicial. Since the pistol was relevant evidence, the testimony of Officer Skelley was relevant in so much as it showed that the pistol was found close to the appellant, and tended to prove that appellant had custody of the weapon. This enumeration is without merit.

4. The other enumerations are without merit.
*Judgment affirmed. All the Justices concur.*

ARGUED JULY 8, 1974 — DECIDED OCTOBER 1, 1974.

Willie C. West, Jr., *pro se, Percy J. Blount,* for appellant.

*Richard Allen, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Deputy Assistant Attorney General,* for appellee.