## 63201. LEDFORD v. THE STATE.

McMURRAY, Presiding Judge.

Billie J. Abrams, Estil Barber, David Leon Johnson, James Ray Williams and Donald Ledford were jointly indicted for possession of marijuana with intent to distribute in violation of the Georgia Controlled Substances Act. Williams and Barber pleaded guilty and testified on behalf of the state at the trial of the remaining defendants, Abrams, Johnson and Ledford, who were each found guilty and sentenced to serve ten years in prison. Defendant Ledford appeals, contending the trial court erred in denying his motion for directed verdict of acquittal because the evidence was insufficient to corroborate testimony of an accomplice or to warrant his conviction. *Held:*

The accomplice, Williams, testified that on January 27, 1981, he received a telephone call at his home in Fort Myers, Florida from

David Johnson (one of the defendants on trial) wanting to know if Williams could locate 500 pounds of marijuana for him. Johnson then told Williams that "Somebody else here that wants to say hello to you. Somebody else took the phone and said, 'Hello, Jim, this is the Senator. How are you getting along?' [Williams] said, 'Fine. What's going on up there?' And he said, 'David's got a deal if you can help him put it together he can make — ya'll can make some money.' "

Continuing his conversation with Johnson, Williams stated that he knew a man who had the marijuana and requested a number where this man could reach Johnson. Johnson gave Williams a number which was stipulated as being the telephone of defendant Ledford's wife. Williams contacted Abrams (another of the defendants on trial) and told him that a man in Georgia, whom he had known about three years, wanted to find some marijuana; and that there was a man with him whom he had met one time but did not know, whose telephone number he had if Abrams wanted to call him. Shortly thereafter Abrams called Williams back and "said he'd called that number and there was no one at home. He said there was two women there, but there was no men there." Williams then telephoned Johnson person to person. Some lady answered the phone and said, " 'David, somebody wants you on the phone.' " After Johnson and Abrams made contact, Abrams called Williams and told him, " 'There's something about the Senator that impresses me. I'm going to try to work with him.' "

Williams further testified that he had met a person who called himself "the Senator" on a previous occasion, "maybe 10 days or a couple of weeks before at some little town in a restaurant" in Georgia. Johnson had introduced this man to Williams as Donald Ledford but "said just call him the Senator." When asked if the voice he heard on the phone was the same as the man he met in Georgia, Williams replied, "I would think so, but I only talked to the man one time." Williams was unable to make a courtroom identification of defendant Ledford as the man he had been introduced to as "the Senator." On cross-examination by defendant Ledford's counsel in response to the question "So as far as knowing this individual that someone has referred to as the Senator, when you see him you can't say that you can do that?" Williams answered, "No, sir. I only saw that man one time, and he had a hat on, a big hat, and I was sitting beside him. I didn't turn around and, you know, look him in the face." Under further cross-examination by defendant Ledford's counsel Williams admitted that he could not state "to a moral certainty" that he had ever talked with or seen the defendant or that defendant "had anything at all to do with this incident." The trial court, outside the presence of the jury, asked, "Do I understand correctly now that you

cannot today identify in this courtroom the man who was introduced to you in Georgia as the Senator?" Williams responded, "No, sir, Judge, I'm not going to say that's the man. I'm not positive, and I'm not going to do it."

Telephone company records established that three telephone calls had been made from two separate telephones in Florida to the number maintained by defendant Ledford's wife in White County, Georgia. An undercover agent for the Georgia Bureau of Investigation testified that he contacted Johnson at that number, but never talked with or saw defendant Ledford. There was no evidence indicating whether defendant Ledford lived with his wife, or that he was or had been known as or called "The Senator." The state's remaining witnesses testified as to the details of the sale and shipment of approximately 950 pounds of marijuana, but there was no further evidence connecting defendant Ledford as a party to the crime. Defendant Ledford moved for directed verdict of acquittal at the close of the state's evidence.

" 'The law specifically lays down the rule that if the accomplice is corroborated in material parts of his testimony, then he may be believed by the jury as to other material parts as to which there is no corroboration . . . (I)f the accomplice is shown to be truthful (corroborated) as to certain material matters he may be believed without corroboration as to other material matters.' *Pitts v. State,* 128 Ga. App. 434, 435 (197 SE2d 495). To this otherwise general rule of law there is an important exception. '(A) distinction must be made between evidence which tends to prove the truth of the accomplice's general testimony and that which tends to prove the identity and participation of the accused . . . (I)nsofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the *accused* with the crime.' *West v. State,* 232 Ga. 861, 865 (209 SE2d 195). It is therefore necessary that the identity and participation of appellant be established by corroboration independent of the accomplice's testimony. The testimony offered by the state that [Williams and Abrams were given the telephone number of defendant's wife by another accomplice] is not sufficient corroboration of the accomplice's testimony to prove the identity and participation of the appellant. [Cit.] The question of the sufficiency of corroboration is a jury question, yet an appellate court has the duty of determining as a matter of law whether there is any corroborating testimony of an accomplice. *Kilgore v. State,* 67 Ga. App. 391 (20 SE2d 187). Here, there was no corroboration; the [judgment] of guilty cannot stand." *Boggus v. State,* 136 Ga. App. 917, 920-921 (7) (222 SE2d 686). See *Shumake v. State,* 159 Ga. App. 141, 142 (1 (a)) (282 SE2d 756); *Black*

*v. State,* 155 Ga. App. 798 (272 SE2d 762). The trial court erred in refusing to grant the defendant Ledford's motion for directed verdict of acquittal.

*Judgment reversed. Banke and Birdsong, JJ., concur.*

DECIDED APRIL 30, 1982.

*James N. Butterworth,* for appellant.

*Nat Hancock, District Attorney, T. Grant Madison, Assistant District Attorney,* for appellee.