## 72899. HOWARD v. THE STATE.
## 72900. GREEN v. THE STATE.
### (351 SE2d 550)

BENHAM, Judge.

Appellants Howard and Green were both named in an indictment charging them with 11 counts of forgery in the first degree. OCGA § 16-9-1 (a). After the trial court directed a verdict of acquittal in favor of appellant Green on Count 11, the jury returned guilty verdicts against both appellants on each of the remaining counts. In their consolidated appeals from the judgments entered on the jury verdicts, appellants maintain that the evidence was not sufficient to sustain their convictions. Appellants specifically point to the testimony of their accomplice and contend it was not sufficiently corroborated, resulting in a lack of sufficient evidence to sustain the verdicts. See OCGA § 24-4-8. We disagree.

The State presented evidence from the victim that appellants, his part-time employees, had access to the desk drawer in which he kept his blank checks. An accomplice, appellant Howard's brother, testified that he saw appellants in possession of blank checks which had the victim's name imprinted on them; he watched appellants write on the blank checks, appellant Green, normally right-handed, using his left hand to do so; and that both men had told the accomplice/witness that they were going to make some money. The accomplice then recounted various trips he had made with appellants to business establishments which appellants would enter with the forged checks, return with goods and cash, and commingle the proceeds. Each check, complete with endorsement and deposit stamp, was admitted into evidence.

"[P]resence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. [Cit.]" *Lunz v. State*, 174 Ga. App. 893, 895 (332 SE2d 37) (1985). Since there was evidence that appellants associated themselves in an unlawful enterprise, "any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all . . . [and each] is responsible for the acts of the [other] only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy. [Cits.]" *Shehee v. State*, 167 Ga. App. 542 (1) (307 SE2d 54) (1983). Thus, it is not necessary to present evidence of each appellant's actual participation in each phase of each crime in order to sustain the convictions. Our review of the trial transcript leads to the conclusion that the testimony elicited from appellants' accomplice, as well as from a handwriting analyst and various police officers, was sufficient to support most of the guilty verdicts returned against appellants.

While the corroboration must be independent of the accomplice's

testimony and must connect the defendants to the crime or lead to the inference of their guilt, "the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. [Cit.]" *Castell v. State*, 250 Ga. 776 (1c) (301 SE2d 234) (1983). "[S]ufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice. [Cits.]" *Gunter v. State*, 243 Ga. 651 (2) (256 SE2d 341) (1979).

A handwriting expert positively identified appellant Howard's handwriting in the endorsement of the check described in Count 5 and testified that the endorsements of the checks in Counts 1, 2, 4, and 7 showed similarities to the handwriting exemplar provided by appellant Howard. The expert also stated that writing on each of the checks involved in Counts 1-10 contained "isolated similarities" to the exemplar provided by appellant Green. She admitted that writing written by a right-handed person with his left hand would contain distortions "but you would have similarities."

The accomplice recalled accompanying appellants to the four business establishments at which nine of the checks were negotiated. The endorsements on the back of the checks corroborate that negotiation took place at those businesses. Although the accomplice could not state which one of the appellants actually negotiated each check, he stated they would both go in with a check and return with goods and cash. Coupled with this testimony is the handwriting expert's positive identification of appellant Howard's handwriting in the endorsement on the check in Count 5, and her finding of similarities to Howard's handwriting on the endorsements of the checks named in Counts 1, 2, 4, and 7. Under the parties to a crime theory, it is unnecessary to determine which of the two appellants actually negotiated the check. Both are held equally responsible.

While Howard endorsed the check in Count 5, there was evidence he negotiated it in Green's presence since the accomplice testified he accompanied both appellants to the place where this check was negotiated. Thus, Green is equally culpable.

Count 3 involves the one check negotiated at a liquor store. The endorsement contained Green's driver's license number. The Moultrie police log for the day on which the check was negotiated contained an entry that Green had visited the station to report a "Signal 28," which could cover the report of a stolen wallet. The accomplice had earlier testified that, after being required to present his driver's license in order to cash the check at the liquor store, Green had de-

cided to report his wallet as stolen. They then drove to the police station where Green made the report while appellant Howard kept Green's wallet.

The arresting officer testified that appellants denied participation when he confronted them with his suspicions concerning their involvement. Appellant Howard, however, offered to make restitution to his employer/victim as to the checks containing Howard's name, Counts 5 and 8. This, along with the accomplice's testimony, and appellants' continuing course of conduct was sufficient evidence to support the jury's guilty verdicts.

The checks in Counts 6 and 10 contained similarities to Green's handwriting and were negotiated at the same business where the check in Count 8 was negotiated. While the accomplice mentioned only one check-cashing trip to that business, he testified that sometimes more than one check would be presented for negotiation. We are not willing to reverse these convictions because the accomplice did not detail three separate trips to the business.

Both the owner and cashier of the business at which the check described in Count 11 was cashed testified that appellant Howard and his brother entered the store together where the witnesses cashed the check and handed the proceeds to the accomplice in appellant Howard's presence.

Since there was no evidence presented concerning the uttering of the check described in Count 9, appellants' convictions as to that count must be reversed.

The dissent would reverse the convictions on Count 3 for failure to prove venue. Citing *Rowland v. State*, 90 Ga. App. 742 (84 SE2d 209) (1954), the dissent concludes that venue for forgery in the first degree is in the county in which the uttering takes place. In *Rowland*, the defendant was charged with forging a bill of sale, and the State established venue as the place where the forgery was uttered. The court pointed out that forging and uttering were, at that time, separate and distinct offenses, and that proving venue as to uttering did not establish the venue as to forgery. In the present-day statute under which appellants were charged, forgery in the first degree consists of knowingly making, altering, or possessing a writing purporting to have been made by another person *and* uttering or delivering such writing. OCGA § 16-9-1 (a). The dissent contends the convictions in Count 3 must be overturned because there was no proof that the liquor store where the check was cashed was in Colquitt County, the site of the prosecution. However, the State did establish that appellants filled in the blank areas of the checks in Colquitt County. It would seem only reasonable that evidence that a forged instrument was forged in a given county would, in the absence of evidence to the contrary, warrant the inference by the jury that the uttering was com-

mitted in that county. *Goldstein v. State*, 94 Ga. App. 437 (3) (95 SE2d 47) (1956).

*Judgments affirmed in part and reversed in part. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, and Pope, JJ., concur. Sognier and Beasley, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

In my view, the evidence was insufficient on all 10 counts as to Green and on all but Counts 5 and 11 as to Howard. The application of the accomplice corroboration rule, OCGA § 24-4-8, demands it.

Checks were taken from Mr. Norman's farm office sometime in the summer of 1985, although he was unaware of it until he received a call from his bank concerning the endorsements. Howard and Green were employed by Norman that summer and had access to the office, as did other farm hands.

Johnny Howard, the brother of defendant Billy Howard, testified for the state, having first pled guilty to first degree forgery involving the check charged in Count 11. His testimony, as an accomplice, is crucial.

Johnny stood watch at the residence of his and Billy's mother while Billy and Green filled out checks which Johnny observed bore Norman's name and were of the same color as the checks allegedly forged. He did not see the face of any of the checks and could not specify any payee name, except he said each defendant filled out checks using the other's name. Green, although right-handed, filled out some checks with his left hand. Johnny cashed the check in Count 11 and gave the money to Billy. Other than this one instance, Johnny could not recall any specific check being passed at any particular place, although he had been in the car with the defendants on unspecified dates and on an unspecified number of occasions when they went to Dixon's and Oxley's in Colquitt County; defendants went into the stores with these checks and came out with money. Count 5 alleged a check payable to Billy Howard passed at Dixon's. Counts 6, 8, and 10 alleged checks payable to Green (6 & 10) and Howard (8) passed at Oxley's. Johnny was also in the car when the defendants went to Rick's in Colquitt County and cashed one of the checks. Counts 1, 2, and 4 alleged passing at Rick's of checks payable to "Willie Lee" (2 & 4) and "Willie Hunter" (1).

A handwriting expert identified the endorsement on the Count 5 check passed at Dixon's, in the name of Billy Howard, as being defendant Howard's handwriting. That was the only check she was able to give an opinion on and she stated that an individual's writing "wrong handed" might cause such distortions in their writing that would make analysis difficult.

Excepting Count 11, no one from any of the establishments where the checks were uttered testified. An investigating officer said this was due to the inability of any of the individuals taking the checks to identify the passers. The only evidence concerning the uttering of the checks in the first ten counts consisted of the checks themselves and the testimony of an officer of the bank upon which the checks were drawn. She stated that the checks, with the exception of those in Counts 10 and 11, were presented to the bank for payment based on the bank's stamp appearing on the checks. None were made payable to the bank and all were negotiated elsewhere.

The first degree indictment charges forgery, i.e., that the checks were uttered and delivered in Colquitt County. "Uttering" is the distinguishing factor between first and second degree forgery (OCGA §§ 16-9-1; 16-9-2) and must be proven for a first degree conviction. *Stone v. State*, 166 Ga. App. 245, 246 (3) (304 SE2d 94) (1983).

While one may be guilty of first degree forgery as a party to the crime, OCGA § 16-2-20, there still must be some connection shown between the accused and the uttering. In *McGowan v. State*, 173 Ga. App. 438, 440 (5) (326 SE2d 805) (1985), although there was evidence that the accused actually forged a check, the conviction was reversed as to one count because "[t]here was no evidence to show that appellant had any connection with uttering or delivering [the check]." The teller to whom the check was presented could not identify the defendant and there was no other evidence to connect him with the uttering. See *Pratt v. State*, 180 Ga. App. 389 (348 SE2d 922) (1986). Likewise here with regard to Count 7, alleging a passing at the American Banking Company, a thorough review of the transcript reveals no mention of this transaction. Count 9 alleges a passing of a check payable to "Jerry Green" at the Pic Pac & Go. The only reference to it consists of the bank officer's reading the deposit stamp of Pic Pac & Go off the back of the check. Johnny Howard said nothing about the Pic Pac & Go or the American Banking Co.

Where there is no conflict in the evidence, and appropriate motions for directed verdicts have been made by both defendants, it is error not to direct verdicts. *Burnette v. State*, 168 Ga. App. 578, 580 (2b) (309 SE2d 875) (1983), citing *Merino v. State*, 230 Ga. 604, 605 (1) (198 SE2d 311) (1973). That is the case with these two counts.

Counts 1, 2, and 4 allege passing at Rick's of checks payable to Willie Hunter (1) and Willie Lee (2 & 4). The only evidence with regard to these counts is the reading of the deposit stamps by the bank officer, indicating uttering, and Johnny's statement that he was in the car when the defendants passed an unidentified check at Rick's.

Counts 6, 8, and 10 allege passing at Oxley's. The check in Count 10 was never processed at the bank, so there is no evidence of its negotiation except accomplice Johnny Howard's testimony. With re-

gard to Counts 6 and 8, the only evidence in addition to Johnny's testimony is the bank officer's reading off the deposit stamps on the checks.

While the testimony of a single witness is generally sufficient to establish a fact, when the only witness is an accomplice the law requires corroboration. OCGA § 24-4-8. "One who is guilty of a crime in which he participated will always be able to relate the facts of the case and if the corroboration goes only to the truth of that history, without identifying the person accused, it is really no corroboration at all . . . *[I]nsofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the accused with the crime." West v. State*, 232 Ga. 861, 865 (209 SE2d 195) (1974) (Emphasis supplied.); *Castell v. State*, 250 Ga. 776, 780 (1) (c) (301 SE2d 234) (1983); *Cofer v. State*, 166 Ga. App. 436, 437 (1) (304 SE2d 537) (1983).

While the corroborating evidence need only be slight, where the defendant is charged with the commission of more than one offense, there must be corroborating evidence of "participation" and "identity" for each offense. *Shumake v. State*, 159 Ga. App. 141 (1) (282 SE2d 756) (1981); *Allen v. State*, 175 Ga. App. 128, 129 (2) (333 SE2d 11) (1985). While the sufficiency of the corroboration is a jury question, an appellate court has the duty of deciding whether, as a matter of law, there is any corroborating evidence of an accomplice. *Shumake*, supra at 142.

Having viewed the evidence on Counts 1, 2, 4, 6, 8 and 10 in the light most favorable to the verdict, I must conclude that, absent Johnny Howard's testimony, there is no evidence connecting these defendants to Counts 1, 2, and 4, and therefore, insufficient evidence to enable a rational trier of fact to find the existence of the offenses charged beyond a reasonable doubt. See *Clenney v. State*, 256 Ga. 116, 117 (344 SE2d 216) (1986); *Boggus v. State*, 136 Ga. App. 917 (222 SE2d 686) (1975). Regarding Counts 6, 8, and 10, setting aside Johnny's testimony, the only evidence connecting the defendants with the checks was their access to blank checks and the appearance of their names as the payees. Such is insufficient to corroborate their identity and participation in the uttering aspect of first degree forgery. *McGowan*, supra; *Shumake*, supra.

Count 3 charged both defendants with a check made payable to "Jerry Green" and passed at the Plaza Package Store. A driver's license number appears on the back of the check and the name of the driver is shown as Jerry Green. A police officer testified that he had determined that the driver's license number was that of the defendant Green. This evidences Green's participation. The bank officer testified that the check reflected the stamp of Plaza Package, indicating that it was negotiated. Johnny Howard did not testify concerning the

Plaza but testified concerning "Plymel's" which is otherwise unidentified. He did state that while he remained in the car, Green went to "Plymel's." He returned to the car and told Johnny he was going to report his wallet as stolen. The Moultrie police log reflected a "signal 28" from Jerry Green on the day the Plaza check is alleged to have been negotiated. Although the officer who took the call had no specific recall of the incident, he did testify that a "signal 28" was consistent with a stolen wallet report.

In a first degree forgery prosecution, venue lies in the county where the instrument is uttered. See *Rowland v. State*, 90 Ga. App. 742, 743 (1) (84 SE2d 209) (1954). Venue is a matter of jurisdictional fact and must be proved beyond a reasonable doubt, although slight evidence may be sufficient where there is no conflicting evidence. *Trogdon v. State*, 176 Ga. App. 246, 247 (1) (335 SE2d 481) (1985); *Patterson v. State*, 157 Ga. App. 233 (276 SE2d 900) (1981). There is no proof that the Plaza Package Store is located in Colquitt County, requiring reversal on this basis as to Green.

Aside from the testimony of Johnny Howard, no evidence connects Billy Howard to the Plaza check. The totality of the evidence is insufficient to sustain the conviction of Howard as to Count 3. See *Clenney*, supra; *Boggus*, supra.

As to the check in Count 5, the handwriting expert stated that Billy Howard wrote the endorsement on the back of that check. This is at least slight evidence of Howard's participation in the uttering of this check, see *Allen*, supra; *Estes v. State*, 169 Ga. App. 685 (1) (314 SE2d 700) (1984), which this corroboration permits consideration of accomplice Johnny Howard's testimony. He placed Billy Howard at Dixon's in Colquitt County and stated that they went there for the purpose of passing checks. This composite evidence sufficiently supports the verdict against Howard as to Count 5, but there is no such evidence concerning Green, and his conviction as to Count 5 should be reversed.

I am authorized to state that Judge Sognier joins in this opinion.

DECIDED DECEMBER 5, 1986.

*Michael A. Sherling*, for appellant (case no. 72899).
*Charles M. Stines*, for appellant (case no. 72900).
*H. Lamar Cole, District Attorney, J. David Miller, Assistant District Attorney, Michael J. Bowers, Attorney General*, for appellee.