## 76681. HUDSON v. THE STATE.
### (374 SE2d 212)

BEASLEY, Judge.
Defendant appeals his convictions of two counts of first degree forgery. OCGA § 16-9-1.

1. The first enumeration of error is that the trial court erred in permitting the State to use as a handwriting exemplar defendant's signature which was requested when he was fingerprinted.

According to the officer who booked defendant, he told defendant he needed defendant's fingerprints. He then testified: "I marked down the x's on the fingerprint card where I needed him to sign it. He signed it. I signed it. And I went ahead and fingerprinted him." Defendant had not been given the *Miranda* (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)) warnings at that time, but he was cooperative and did not object to signing or make any complaint about signing. The officer did not tell defendant that he *had* to sign the card, but merely told him to sign it. If defendant had refused, this would have been noted on the back of the card.

There is no indication that requiring the signing of the card was for any purpose other than as part of the administrative processing when defendant was booked. Nonetheless, the State ultimately decided to use the signature on the fingerprint card for comparison by

an expert with the signatures on the checks allegedly forged.

Appellant relies exclusively on the State Constitution and cases construing it.

Art. I, Sec. I, Par. XVI, 1983 Ga. Const. provides: "No person shall be compelled to give testimony tending in any manner to be self-incriminating." In essentially the same character this right has been a part of the body of our constitutional law since 1861. It arises from the same roots as a provision in the Fifth Amendment to the United States Constitution. See the dissent of Justice Gunter in *Creamer v. State*, 229 Ga. 511, 522 (192 SE2d 350) (1972), for a brief historical description. Our courts have not given the Georgia provision the same construction as the federal courts have given to the federal provision, taking instead a broader view.

While the language of the Fifth Amendment has long been confined to "testimony," our provision prohibits the State from compelling the individual to affirmatively produce any evidence, oral or real, physical or by action. *Creamer v. State*, supra at 516 says it means "all kinds of evidence . . . all types of evidence." See also *Johnson v. State*, 156 Ga. App. 496, 499 (274 SE2d 837) (1980); OCGA § 24-9-20. This is predicated on the common law maxim that "no man is bound to accuse himself of any crime, or to furnish *any* evidence to convict himself of any crime." (Emphasis in original.) *Marshall v. Riley*, 7 Ga. 367, 370 (3) (1849). See *Underwood v. State*, 13 Ga. App. 206, 208 (78 SE2d 1103) (1913). "The constitutional guaranty protects one from being compelled to furnish evidence against himself, either in the form of oral confessions or incriminating admissions of an involuntary character, or of *doing an act* against his will which is incriminating in its nature." (Emphasis in original.) *Calhoun v. State*, 144 Ga. 679 (1 & 2), 681 (87 SE 893) (1915).

We must consider the circumstances in which the affixing of the signature which was later used to convict, occurred. In this instance, the focus is on two aspects of the occurrence.

a) One is that Hudson was not being compelled to give *evidence* against himself. Instead, he was being "compelled," if that characterization should be attached to the request of the deputy sheriff under the circumstances of defendant being under arrest and in the booking process, to sign the fingerprint card so as to directly verify and record as fact the identification of the fingerprints as Billy Ray Hudson's. The purpose was to provide near-conclusive proof later, for administrative purposes, that *this* is the person who was arrested and booked.

Thus the *purpose* of obtaining the arrestee's signature was not evidence-gathering or investigatory but was quite another, a routine administrative purpose. Evidence to prove crime was not being sought. Hudson was not being requested "to perform an act resulting in production of incriminating evidence, . . . [which] produces inad-

missible evidence" as pointed out in *Wessels v. State*, 169 Ga. App. 246 (1) (312 SE2d 361) (1983).

The fact that the signature was later *used* as evidence against defendant does not tarnish its original innocent purpose, absent evidence of subterfuge. Of that there is no indication. In fact, the evidence is that the State did not even conceive of using the fingerprint card signature for comparison until after its efforts to locate other known handwriting had failed. As stated in *Day v. State*, 63 Ga. 667 (2) (1879) and quoted in *Creamer*, supra at 516, one cannot compel another by force against his consent to do something "for the *purpose* of using it as evidence against him on the criminal side of a court."

Simply put, Hudson was not being requested to furnish something which was contemplated to be used as evidence of crime, but was instead being requested to record the identification of his fingerprints by way of writing his signature on the fingerprint card, as part of the standard booking procedure. It was not done to "further the prosecution," in words found in *Meriwether v. State*, 63 Ga. App. 667, 670 (2) (11 SE2d 816) (1940). The court there also distinguished *Blackwell v. State*, 67 Ga. 76 (44 Am. R. 717) (1881), because the forced profert of defendant's leg was for an evidentiary *purpose,* id. at 672, whereas requiring defendant to go from his cell to a nearby room was for the *purpose* of placement for inspection in a lineup and did not aid in the process of identification. And as recognized in *State v. Thornton*, 253 Ga. 524, 525 (2) (322 SE2d 711) (1984), requiring the defendant to do an act for "the purpose of producing evidence to be used against him" is the area of activity governed. The *purpose* of the requested act by the school official was also instrumental in the ruling that the student's emptying of her pockets was not violative of the self-incrimination provision, in *State of Ga. v. J. T.*, 155 Ga. App. 812 (273 SE2d 214) (1980).

The constitutional bar is that "No person shall be compelled to give testimony tending in any manner to be self-incriminating." When scrutinizing the particular evidence claimed to have been unconstitutionally obtained, the law looks not only at whether it was compelled, whether the defendant gave it or it was instead simply taken from him, who did the compelling, and whether the evidence was self-incriminating, but it also looks at whether what was obtained was *evidence.*

The State cannot demand it of defendant by court order, as part of its evidence-gathering function, when it has charged that person with crime. *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979). "To force the defendant, then, to produce samples of his handwriting—potentially incriminating evidence which may be used as evidence in the defendant's prosecution—would violate constitutional sanctions against self-incrimination." Id. at 57. See also *John-*

*son v. State*, supra, in effect reversing denial of a motion to quash the State's notice to produce.

Just as not all *compelled* evidence is prohibited, depending on who is doing the compelling (the assistant principal in *State v. J. T.*, supra), so not all matter emanating from an act of defendant and later used in evidence constitutes what would be classified as "evidence of crime" when it is being originated.

Obviously, a person's own signature would be "self-incriminating" by its very nature, if it links defendant to the crime charged. A forgery case, as here, could rarely if ever be proved without a known handwriting of the defendant, created somewhere, at some time, by himself. Thus, whether it is within the *prohibited* species of self-incriminating acts depends on the circumstances under which it occurs.

Since at the time and under the circumstances in which the signature was given, it did not constitute "evidence" against defendant, its later use as evidence was not precluded. In so holding, we do no disservice to the meaning of the constitutional provision.

b) This brings us to the second aspect of importance here, the question of compulsion.

"It has . . . frequently been held that where a person after arrest does not act voluntarily or without objection which tends to incriminate himself it is not error or unconstitutional to allow evidence of the act in the trial of the case. *Whippler* [*v. State*, 218 Ga. 198, 203 (126 SE2d 744) (1962)]; *Thomas v. State*, 213 Ga. 237, 239 (98 SE2d 549) and cases cited." *State v. J. T.*, supra. See also *Montgomery v. State*, 174 Ga. App. 95, 96 (1) (329 SE2d 166) (1985).

Examples where the state constitutional prohibition against compelled self-incrimination was violated include: compelling a suspect to hand over lottery tickets, *Grant v. State*, 85 Ga. App. 610 (69 SE2d 889) (1952); requiring an operator of a motor vehicle to drive it upon scales, *Aldrich v. State*, 220 Ga. 132 (137 SE2d 463) (1964); requiring defendant to produce physical evidence under old Code § 38-801 (g), *Johnson v. State*, supra; requiring defendants after an illegal arrest to surrender their clothing, *Raif v. State*, 109 Ga. App. 354 (136 SE2d 169) (1964); compelling a resisting defendant to submit a handwriting exemplar, *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979).

We are reminded of the admonition found in *Underwood v. State*, supra: " 'Courts should liberally construe the constitutional provisions against compelling the accused to be a witness against himself, and refuse to permit any first or doubtful steps which may invade his rights in this respect.' " Our courts in applying the constitution as construed have found compulsion where the accused was under the illegal control of the State.

In *Marshall v. State*, 130 Ga. App. 572 (203 SE2d 885) (1974), while defendant was being processed in jail, a search of his person

revealed a knife. Absent showing the validity of defendant's arrest the evidence was held inadmissible. The decision was based upon the reasoning of *Sherman v. State*, 2 Ga. App. 148 (1) (58 SE 393) (1907): "Evidence obtained by illegal seizure and search of the defendant's person, by which he is compelled to criminate himself, being inadmissible against a defendant accused of crime, the burden devolves upon the State to show that evidence obtained by search was procured after a legal arrest."

Quoting *Raif v. State*, supra, it was stated in *Holtzendorf v. State*, 125 Ga. App. 747, 751 (188 SE2d 879) (1972), a case of physical precedence involving illegal arrest: " 'A prisoner in police custody by reason of an illegal arrest (or any other form of detention, overt or subtle) is in no position to refuse to comply with the demands of the officer in whose custody he is placed whether such demand is couched in the language of a polite request or a direct order. If a command, the prisoner is directly forced to comply, and if a request, he is indirectly forced to comply.' " Accord *Hunt v. State*, 133 Ga. App. 444 (211 SE2d 399) (1974), where the police "demanded" to see papers which were "finally surrendered"; *Hill v. State*, 140 Ga. App. 121, 124 (2) (230 SE2d 336) (1976), where an illegal arrest infected a consent to search a backpack; *Radowick v. State*, 145 Ga. App. 231, 241 (4) (244 SE2d 346) (1978), a physical precedent involving coerced consent following illegal arrest.

On the other hand, the fact that defendant is under arrest or in the imminent presence of a number of law enforcement officers does not demand a finding that his consent or actions were as a matter of law involuntary. *Noland v. State*, 178 Ga. App. 486, 488 (2) (343 SE2d 763) (1986); *Welch v. State*, 237 Ga. 665, 673 (9) (229 SE2d 390) (1976).

The question presented based upon the evidence is whether there was sufficient coercive effect in obtaining defendant's signature so that use of his writing as exemplar violated the State constitutional prohibition against self-incrimination. No question exists as to the legality of the arrest or that, in fact, the signature was obtained as part of the routine administrative procedure at the jail. Defendant did not protest nor did he give any indication that he did not desire to sign the document. There is nothing to establish that the State used the process as a subterfuge to gain a sample of his handwriting or even at that time intended to use his signature for anything other than to verify on the card that the prints on the same card were his.

Just because the creation of the act is instigated or initiated by a person other than defendant himself does not automatically make it "compelled," any more than undercover involvement in drug buying is *per se* entrapment. Nor, as appellant urges, does the absence of the *Miranda*-enumerated warnings when the arrestee is asked to sign the

fingerprint card in accordance with standard administrative identification procedure constitute compulsion within the meaning of the state constitution. That is, the failure to give such warnings does not render compelled the giving of the signature. For one thing, these warnings expressly relate to statements, not acts.

In these circumstances, although defendant was under arrest at the time his signature was obtained, we conclude that defendant was not compelled to incriminate himself within the meaning of our constitutional provision. This is particularly true where the defendant's act was not in an evidence-gathering context.

2. Defendant contends that the evidence did not sustain his conviction under count 1 of the indictment because there was no eyewitness testimony that defendant uttered the check.

"Uttering or delivering the writing is an essential element of forgery in the first degree whereas it is not an element of the lesser degree of forgery [forgery in the second degree—OCGA § 16-9-2]." *Ward v. State*, 123 Ga. App. 216 (1) (180 SE2d 280) (1971). *Holmes v. State*, 145 Ga. App. 125 (243 SE2d 328) (1978). An offer to pass a check to another person as a genuine instrument constitutes "uttering." *Walker v. State*, 127 Ga. 48, 49 (56 SE 113) (1906). There must be a representation of genuineness but acceptance is not necessary. *Taylor v. State*, 128 Ga. App. 13 (195 SE2d 294) (1973); *Curtis v. State*, 80 Ga. App. 244, 246 (1) (55 SE2d 758) (1949).

There was no direct testimony that defendant uttered the check which was the subject of count 1 of the indictment. In *McGowan v. State*, 173 Ga. App. 438, 440 (326 SE2d 805) (1985), although the State's expert witness testified that the forged entries on the check and the endorsement matched the handwriting exemplars given by defendant, the eyewitness could not identify defendant as the one who presented the check for cashing. This court reversed defendant's conviction as to forgery in the first degree of that check because the State failed to prove an essential element of the offense.

"Forgery, like fraud or any other fact, may be proved by circumstantial evidence." *Stow v. Hargrove*, 203 Ga. 735 (5) (48 SE2d 454) (1948). *Willis v. Bozeman*, 224 Ga. 729, 730 (1) (164 SE2d 841) (1968); *Pratt v. State*, 180 Ga. App. 389 (1) (348 SE2d 922) (1986). Here, unlike in *McGowan*, supra, defendant was named as the payee and his name, and not that of another, appeared as indorser. Defendant was identified by the handwriting expert who testified for the State as the person who indorsed the check. The West Side Liquor Store which cashed the check, as a matter of policy, required one offering a check and indorsing it to identify himself by means of a personal driver's license, plus an address and phone number. Although circumstantial, the evidence was ample to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt as to the first

count. *Pratt v. State*, supra; *Minter v. State*, 170 Ga. App. 801 (2) (318 SE2d 226) (1984). See also *Mobley v. State*, 101 Ga. App. 317, 321 (113 SE2d 654) (1960).

3. Defendant asserts the trial court failed to properly inform the jury of its possible verdicts because it only discussed the facts pertinent to count 1 and neglected to discuss those associated with count 2. While the portion of the charge referred to in defendant's brief does indeed appear limited to count 1, an examination of the charge as a whole reveals that it did not confuse the jury as to the effect of each count or render them indistinguishable. In determining the correctness of an isolated excerpt of instructions given in criminal proceedings, the charge as a whole must be considered. *Moses v. State*, 245 Ga. 180, 182 (2) (263 SE2d 916) (1980); *Collier v. State*, 244 Ga. 553, 562 (4) (261 SE2d 364) (1979).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED OCTOBER 4, 1988.

*David B. Irwin*, for appellant.
*Robert F. Mumford, District Attorney*, for appellee.