## A90A0503. GRAHAM v. THE STATE.
(396 SE2d 52)

POPE, Judge.

Defendant Joe Graham, Jr., was charged with burglary and six counts of forgery in the first degree. He was convicted only on three counts of forgery. On appeal, he argues the evidence was insufficient to support the convictions. In particular he argues that the testimony of his alleged accomplice was not corroborated sufficiently. We affirm.

"In Georgia, the testimony of an accomplice used to convict the accused of a crime must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime or leading to the inference that he is guilty.

[Cits.] However, where two or more accomplices testify at the trial of an accused, the testimony of one accomplice may be corroborated by the testimony of the other accomplice. [Cits.]" *Eubanks v. State*, 240 Ga. 544, 545 (242 SE2d 41) (1978). "Presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. Since there was evidence that [Graham] associated [himself] in an unlawful enterprise, any act done in [pursuit] of the conspiracy by one of the conspirators is in legal contemplation the act of all and each is responsible for the acts of the other only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy. Thus, it is not necessary to present evidence of [Graham's] actual participation in each phase of each crime in order to sustain the convictions." (Citations and punctuation omitted.) *Howard v. State*, 181 Ga. App. 187 (351 SE2d 550) (1986).

The evidence at trial showed a scheme to forge and then cash checks stolen from Douglas Aluminum Foundry (DAF). At trial, Jerry Blackmon, who was indicted along with Graham but who entered a plea of guilty to the charges, testified against Graham. Blackmon testified he and Graham burglarized DAF and took from it a company checkbook and checkwriter. (This testimony was uncorroborated and the jury acquitted Graham on the burglary charge.) The two then went to the home of Hazel Lannett Pinson, Blackmon's girl friend. According to Blackmon, Hazel Pinson and Graham took the checkbook and the checkwriter to a bedroom where they collaborated in forging checks, with Graham operating the checkwriter to imprint amounts on the checks and Hazel Pinson filling out the rest of the check. This event was corroborated at trial by the testimony of Hazel Pinson (who had entered a plea of guilty to second degree forgery) and her sister, Lillie Bell Pinson. Also corroborated by Hazel Pinson's testimony was Blackmon's account of how he and Graham borrowed Hazel Pinson's white Nissan car and drove with her to a store on Smokey Road where they cashed one of the checks and then he and Graham divided the money. The clerk at the store testified that she cashed DAF check number 5800 (subject of Count 3 of the indictment for which Graham was convicted) on November 9, 1988 and that she saw a small white car parked outside. Hazel Pinson also testified that before they left to go to the store on Smokey Road, Blackmon and Graham discussed various stores in Newnan where they could cash the forged checks. She also testified that Graham and Blackmon took her home but that the two men continued to use her car that day and the next. This corroborated Blackmon's testimony that he and Graham went to the E-Z Stop where Blackmon cashed DAF check number 5814 (subject of count 4 for which Graham is convicted). The clerk at this second store testified that, while she saw no one else with

Blackmon, she did notice a small white car parked outside. Regarding count 7 for which Graham was convicted, Blackmon testified that, with Graham driving, the two went to the First Union Bank where Blackmon tried to negotiate DAF check number 5797. When the teller seemed to hesitate about cashing the check, Blackmon and Graham decided it was too dangerous to wait and drove off. Rachael Hood, teller supervisor at the bank, testified that one of her tellers brought the suspicious check to her attention and that she saw the people in a white-looking car drive off.

The State also adduced the testimony of Lillie Bell Pinson that she saw Graham hide the stolen checkbook and the checkwriter outside the Pinson house. Police found the articles in the woods outside the house. In addition, the clerk at Tommy's Self Serve (formerly known as Mr. Bee's) positively identified Graham as the man who attempted to cash a DAF check at her store early on the morning of November 10. She was unable to cash it because she did not have enough money. She also testified that she knew Blackmon and that Graham and Blackmon were together. Blackmon also testified about this incident. Although at trial, Graham claimed he was in Atlanta helping a friend move during the relevant time, the investigating police officer testified that, when questioned, Graham never mentioned the alibi but said he had heard something about some girls forging checks and a stolen checkwriter.

"While the corroboration must be independent of the accomplice's testimony and must connect the [defendant] to the crime or lead to the inference of [his] guilt, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. Sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice." (Citations and punctuation omitted.) *Howard v. State,* supra at 187-188. Contrary to Graham's argument, we find the State produced sufficient evidence to corroborate the testimony of Blackmon, Graham's accomplice, that Graham participated in a conspiracy to forge and to pass forged checks and to connect Graham with each of the counts for which he was convicted. We conclude that, pursuant to the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), a rational trier of fact could have found Graham guilty beyond a reasonable doubt of the crimes charged.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED JULY 3, 1990 —
REHEARING DENIED JULY 16, 1990.

*Glover & Davis, R. Keith Prater*, for appellant.
*William G. Hamrick, Jr., District Attorney, Agnes T. McCabe, Assistant District Attorney*, for appellee.