A92A0937. GORDON v. THE STATE.
(425 SE2d 906)

ANDREWS, Judge.

Gordon appeals her conviction of 69 counts each of accessing a computer for fraudulent purposes, OCGA § 16-9-93 (a), and first degree forgery of the checks so produced, OCGA § 16-9-1.

Viewed in favor of the verdict, the evidence was that Gordon worked for Tara Foods, a peanut butter producing subsidiary of Kroger Company, from December 1983 until November 1988. She worked on the payroll and was the payroll clerk when she left.

The main office of the Kroger Company was located in Cincinnati, Ohio. The entire Kroger corporate structure used the same payroll computer system and the main computer was located in Cincinnati, where all programs for the system originated. The duties of the payroll clerks in the system, including Gordon, included collecting the time cards for the employees each week, totaling the hours worked and punching these numbers into the main computer system. This resulted in the checks being printed at the local office. The checks came off the computer in a single perforated sheet and then had to be physically separated. The information put into the computer was balanced with the printed checks. After doing this, Gordon would take the checks to either Jack Fleming, the plant manager, or Tyrone Massey, the comptroller, the authorized signers for Tara Food checks. They would sign the checks and return them to her. She then distributed the checks to the supervisors who gave them to the individual employees. Checks were normally printed on Wednesday morning and handed out to the clean-up crew after 4:00 p.m. Wednesday and to the majority of employees on Thursday.

From February 1986 through October 1988, checks were issued in the names of 28 different employees and then cashed without their knowledge. None of them authorized anyone else to sign and cash the checks for them. Most of these checks were vacation checks. It was the practice to issue the employees a check before they took their vacation, representing the vacation pay due them during that time.

Their regular pay check would also issue at the normal time. None of the 28 employees involved took the vacation represented by the issued and cashed checks, nor had most of them accrued that much vacation.

The Kroger computer access system was set up so that each employee had a computer profile which allowed that employee access to only those portions of the computer programs that were necessary to that person's job. At Tara Foods, only two people had profiles which allowed access to the payroll information, Gordon and Massey. Massey was not present on the days that over 20 percent of the improperly issued checks were produced. Gordon, according to company attendance records, was present when all were produced. Further, whoever produced the checks would also have to obtain the appropriate authorized signatures before the checks could be cashed, and Gordon did this as payroll clerk.

The checks were all cashed at First State Bank & Trust, where the Tara Foods payroll account was maintained, although many of the employees named on the checks had accounts at other banks or the credit union. Gordon was responsible for making the deposit to cover the payroll, which she did each Wednesday. Most of the improperly issued checks, according to the bank markings on them, were cashed on Wednesdays, the same day they were issued. These checks totaled between $35,000 and $36,000.

Employee Letchworth, in whose name one of the checks listed in the indictment was issued, testified to an additional incident when she was issued a check to which she was not entitled. She took it back to Gordon who suggested that the check be cashed and the proceeds split between them. Letchworth declined and left that check with Gordon.

1. Gordon's second and third enumerations both deal with claimed errors relating to Counts 1 through 10 and 85 through 94, and will be addressed together.

It is contended that the court erred in not granting her general demurrer and motion for directed verdict as to these counts. Both were premised on the statute of limitation. Pretermitting the merits of the arguments made, we note that the jury returned not guilty verdicts on these counts after being instructed regarding the statute of limitation defense, making error, if any, harmless. "Error must be shown to be harmful before it will be deemed to be reversible error. [Cit.]" *Williams v. State*, 201 Ga. App. 384, 386 (3) (411 SE2d 316) (1991).

2. The first enumeration attacks the sufficiency of the evidence on the accessing computer counts on four premises.

(a) In Enumeration 1 (a), as well as the fifth enumeration dealing with denial of her motion for directed verdict, Gordon contends the

evidence was insufficient because it was circumstantial and did not exclude every hypothesis except that of her guilt. These two enumerations are considered together. OCGA § 16-9-93 provides that "[a]ny person who knowingly and willfully, directly or indirectly, without authorization, accesses, causes to be accessed, or attempts to access any computer, computer system, computer network, or any part thereof which, in whole or in part, operates in commerce or is owned by . . . any entity operating in or affecting commerce for the purpose of: (1) Devising or executing any scheme or artifice to defraud; or (2) Obtaining money, property, . . . for themselves or another by means of false or fraudulent pretenses, representations, or promises . . ." is guilty of computer fraud.[1]

Here, the checks were not received by the payees and reflect on their faces that they were cashed. Gordon had the knowledge of the computer system and the access code for the payroll system that gave her opportunity for committing the crime. Her theory was that the other individual who also had the access code for payroll could have done it.

"Under *White v. State*, 253 Ga. 106, 107 (317 SE2d 196) (1984), 'circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt.'" *Peppers v. State*, 261 Ga. 338, 339 (1) (404 SE2d 788) (1991). "Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb the finding, unless the verdict is unsupportable as a matter of law. [Cits.]" *Chambless v. State*, 165 Ga. App. 194, 196 (2) (300 SE2d 201) (1983). Here, the jury's conclusion that Gordon, and not the other suggested perpetrator, was the one who accessed the system and generated these checks cannot be said to be unsupportable as a matter of law. It is not our province to reweigh the evidence and the inferences drawn from it by the jury. *Holcomb v. State*, 198 Ga. App. 547 (402 SE2d 520) (1991); see OCGA § 24-9-80.

(b) Gordon also contends there was a fatal variance between the allegata and probata. The indictment in Counts 1 through 84 alleged that Gordon "did . . . knowingly, willfully, directly and without authorization, access a computer network owned by Kroger Company, . . . to wit: Francis Gordon did access the computer network of Kroger Company, . . . and change certain data, to wit: accumulative

---

[1] This statute was substantially revamped by Ga. L. 1991, p. 1045 et seq. which did not go into effect until after the conviction in this case. This case is considered under the old version of the statute.

leave records of each employee . . . listed, thereby causing the creation of certain checks, . . . , when no such payment for said accumulative leave was authorized."

Gordon cites in support of her argument the testimony of Massey and Donnelly, the auditor, who both denied any personal knowledge of any computer changes in the leave records of employees.

This overlooks testimony from these same witnesses, however, that review of company business records revealed that there were employees who had been paid for more vacation hours than they were entitled to and that checks were issued in situations where there was no reason for the check's issuance. Further, the audit revealed that, although there was a 99 percent accuracy rating between hours worked and pay issued, there was only a 50 percent accuracy rating with regard to vacation earned and vacation pay issued. Therefore, there was evidence from which the jury could have concluded that some manipulation of employee hours had occurred resulting in the improper checks.

Even assuming, however, that there was no such proof, that would not automatically result in the conclusion that there was a fatal variance between the allegata and probata.

"Based on *DePalma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969), our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. " ' "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." ' [Cits.] . . . [I]t is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense [and] not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense." *Partridge v. State*, 187 Ga. App. 325, 327 (3) (370 SE2d 173) (1988). Here, the indictment fulfills both requirements.

(c) Gordon also alleges the State's failure to prove that Kroger Company, the victim, was a business operating in commerce as required by OCGA § 16-9-93.[2] In addition to the fact that Kroger was headquartered in Ohio and used an interstate computer network to run its operations, there was also proof that the company owns thirty-six or more manufacturing companies, as well as the Kroger chain of grocery stores, a portion of Super X Drugstores, and five or six food chains operating west of the Mississippi. Commerce was adequately

---

[2] In the revamped statute, effective in 1991, the requirement that "commerce" be proven has been deleted.

proven.

3. Subsection (d) of the first enumeration and the sixth enumeration deal with the adequacy of evidence for convictions of first degree forgery of the checks as set out in Counts 95 through 168 and will be considered together.

With the exception of the check listed in Count 8 and Count 92, which contained the admitted signature of Gordon in her own name under that which purported to be that of Schoolman and which was issued and cashed in June 1986, there was no direct evidence to show that Gordon presented any of the checks to the bank. Gordon was found not guilty of those two counts.

" 'Uttering or delivering the writing is an essential element of forgery in the first degree [OCGA § 16-9-1 (a)] whereas it is not an element of the lesser degree of forgery (forgery in the second degree — OCGA § 16-9-2).' [Cits.] An offer to pass a check to another person as a genuine instrument constitutes 'uttering.' [Cit.] There must be a representation of genuineness but acceptance is not necessary. [Cits.]" *Hudson v. State*, 188 Ga. App. 684, 689 (2) (374 SE2d 212) (1988).

There was no witness from the bank who could identify Gordon as having presented any of the forged checks. There was no handwriting comparison presented by an expert or lay witness. There was nothing to tie Gordon to the presentation of these checks except the fact that she regularly conducted the company's business at that bank and had, on occasion, cashed other employees' checks with their permission, but every time she did so, she was required to sign her own name under that of the payee. The State has failed to prove uttering by Gordon and the convictions of Counts 95 through 168 (except 98, 132, 145, and 155, upon which she was acquitted) must be reversed. *McGowan v. State*, 173 Ga. App. 438, 439 (5) (326 SE2d 805) (1985); see *Graham v. State*, 196 Ga. App. 426 (396 SE2d 52) (1990); *Hudson v. State*, supra; *Howard v. State*, 181 Ga. App. 187 (351 SE2d 550) (1986) (both *Howard* and *Graham* involved corroborated accomplice testimony, including handwriting analysis or third party identity of the writer as involved in the uttering, and *Hudson* involved extensive circumstantial evidence linking the defendant to the crime, including handwriting comparisons).

4. Finally, Enumerations 4 and 7 allege error in admission of the documents in State's Exhibit 1, a book containing, inter alia, copies of the checks and time cards of the employees for whom they were allegedly issued.

(a) Gordon contends, relying on *Hollingsworth v. State*, 7 Ga. App. 16, 17 (65 SE 1079) (1909), that evidence relating to Counts 1 through 10 and 85 through 94, should not have been admitted due to the statute of limitation defense. As noted in Division 1 above, how-

ever, the jury acquitted Gordon of the counts subject to that defense and, since the jury was not instructed that those documents could be considered as to the remaining counts, any evidentiary objection as to the evidence would be rendered harmless in these circumstances.

(b) Also, Gordon alleges error in the court's admission into evidence of State's Exhibit 1, a notebook containing both the improperly issued checks, properly issued pay checks, time sheets, and computer generated weekly pay histories for the affected employees.

The objection made below and presented for consideration here is that "a proper foundation has not been laid for the admission into evidence of any business record. . . ."

"Objection on the ground of a lack of proper foundation without stating what the proper foundation should be is insufficient and presents nothing for consideration on appeal. *Newman v. State*, 239 Ga. 329 (236 SE2d 673) (1977); *Dillard v. State*, 128 Ga. App. 747 (197 SE2d 924) (1973)." *Dick v. State*, 246 Ga. 697, 704 (13) (273 SE2d 124) (1980); *Carter v. State*, 146 Ga. App. 322, 323 (6) (246 SE2d 378) (1978).

In addition, the evidence presented showed the normal method used by Kroger Company in issuing payroll checks and keeping time records and these records were properly admitted. See *Gilreath v. State*, 247 Ga. 814, 829 (10) (279 SE2d 650) (1981).

*Judgment affirmed in part and reversed in part. Birdsong, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I fully concur but note that, with respect to Division 3 of the opinion, the trial court did not instruct the jury on the law regarding parties to a crime. See OCGA §§ 16-2-20; 16-2-21. Thus the jury was compelled to find that defendant herself uttered or delivered the checks. The circumstantial evidence did not exclude every reasonable hypothesis save that defendant did so.

DECIDED NOVEMBER 24, 1992.

*Walters, Davis, Smith, Meeks & Pittman, Thomas H. Pittman*, for appellant.

*Britt R. Priddy, District Attorney, Gregory W. Edwards, Assistant District Attorney*, for appellee.